# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00652-SCT

*SALVADOR ARCEO, M.D. AND ST. DOMINIC - JACKSON MEMORIAL HOSPITAL*

*v.*

*MYRTIS TOLLIVER, AS ADMINISTRATRIX OF THE ESTATE OF TOMMIE C. TOLLIVER, DECEASED, INDIVIDUALLY, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF TOMMIE C. TOLLIVER, DECEASED*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 03/03/2005 |
| TRIAL JUDGE: | HON. BOBBY BURT DeLAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL E. BARNES |
| | GEORGE QUINN EVANS |
| | KATHRYN RUSSELL GILCHRIST |
| | EDMUND L. BRUNINI |
| ATTORNEYS FOR APPELLEE: | W. ERIC STRACENER |
| | E. VINCENT DAVIS |
| | DEBORAH McDONALD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 11/16/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is denied.  The original opinions are withdrawn, and these opinions are substituted therefor.

¶2.     Aggrieved by the trial court's refusal to dismiss this medical malpractice case due to the plaintiff's failure to give the required statutory notice, Salvador Arceo, M.D., petitioned this Court for an interlocutory appeal.   St. Dominic–Jackson Memorial Hospital joined Dr. Arceo's petition.   Having granted the interlocutory appeal, *see* M.R.A.P. 5, we find that since the plaintiff failed to comply with the notice provisions of Miss. Code Ann. § 15-1-36(15) (Rev. 2003), the Hinds County Circuit Court erred in denying the defendants' motion to dismiss, or in the alternative, for summary judgment.   Accordingly, we reverse the trial court judgment and render judgment here in favor of the defendants.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3.     On July 9, 2002, Tommie C. Tolliver, the daughter of the plaintiff, Myrtis Tolliver, was seen and evaluated in the emergency room at St. Dominic–Jackson Memorial Hospital.   Over the course of several days, Tommie Tolliver was treated by Dr. Salvador Arceo and various hospital employees for meningococcal meningitis and sepsis; however, on July 13, 2002, Tommie Tolliver died. On June 4, 2004, Myrtis Tolliver filed a complaint for medical malpractice and negligence against Dr. Arceo and John and Jane Doe defendants.   On June 25, 2004, the plaintiff filed a first amended complaint; and, on July 23, 2004, the plaintiff filed a second amended complaint.[1]   Prior to the filing of these complaints, the plaintiff failed to

---

[1]The original complaint was styled "Myrtis Tolliver, On Behalf of Tommie C. Tolliver, Deceased v. Salvador Arceo, M.D., and John and Jane Does 1-5." The first amended complaint was styled "Myrtis Tolliver, as Administratrix of the Estate of Tommie C. Tolliver, Deceased, Individually, and on Behalf of the Wrongful Death Beneficiaries of Tommie C. Tolliver, Deceased v. St. Dominic–Jackson Memorial Hospital; Salvador Arceo, M.D.; Amy Morehead, R.N.; (FNU) Cleveland, R.N.; and John and Jane Does 1-7." The second amended complaint

2

submit the notice required by Miss. Code Ann. § 15-1-36(15) (Rev. 2003).[2]  After Dr. Arceo

filed a motion to dismiss, or in the alternative, for summary judgment, the trial court denied

the motion, stating in its order, inter alia:

> The Court finds that while the Notice provisions of Miss. Code Ann. § 15-1-36(15) are mandatory, they are not jurisdictional.  The Court finds that the purpose of such Notice provisions is to afford the parties a period of 60 days within which they can investigate and attempt an amicable resolution of the claim without the necessity of litigation.  The Court further finds that while Plaintiff did not comply with the Notice provisions of Miss. Code Ann. § 15-1-36(15), to impose the ultimate sanction of dismissal is unduly harsh under the circumstances.  The Court is of the opinion that the purpose of the Notice provision of Miss. Code Ann. § 15-1-36(15) will be fulfilled by an abatement of the action for a period of 60 days and that such abatement is proper.  ***Jackson v. City of Wiggins***, 760 So.2d 694 (Miss. 2000); ***City of Pascagoula v. Tomlinson***, 741 So.2d 224 (Miss. 1999); ***Schepps v. Presbyterian Hospital of Dallas***, 652 S.W.2d 934 (Tex. 1983).

---

had the identical style, except that, with the first name of Nurse Cleveland having been determined, "(FNU) Cleveland, R.N.," was amended to read "Stephanie Cleveland, R.N." The record is silent as to process being issued after the filing of the original complaint and the seconded amended complaint; however, the record does reveal that after the first amended complaint was filed on June 25, 2004, process was issued that same day.  The return on this summons reveals that on July 13, 2004, copies of the summons and first amended complaint were left with Catherine Arceo, the wife of Dr. Arceo, and thereafter, that copies of the summons and first amended complaint were mailed to Dr. Arceo.  St. Dominic was likewise served with process on July 13, 2004.  However, the first responsive pleadings filed by the defendants addressed only the second amended complaint.  Certainly, pursuant to Miss. R. Civ. P. 15(a), the plaintiff appropriately filed the first amended complaint and second amended complaint without leave of court, since at the time of the respective filings, no responsive pleadings had been served.  Likewise, the record reveals that Dr. Arceo actually received a copy of the summons and first amended complaint on or about July 13, 2004.

[2]It appears from the record that the first time the plaintiff attempted to give the required statutory notice was by letter from her counsel to Dr. Arceo.  This letter was dated November 30, 2004.

It is from this trial court order denying their motion to dismiss, that the defendants petitioned this Court for an interlocutory appeal. We granted the defendants' petition and stayed the trial court proceedings, pending resolution of this issue on appeal.

**DISCUSSION**

¶4. Dr. Arceo and St. Dominic frame the issues this way: "(1) Section 15-1-36(15) of the Mississippi Code states that '[n]o action based upon the health care provider's professional negligence may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action.' Does the Plaintiff's noncompliance with this notice requirement require dismissal of her medical malpractice claims against Dr. Arceo? (2) Are the Plaintiff's claims now time-barred by the two year medical malpractice statute of limitations? (3) If Plaintiff's noncompliance requires dismissal, should her Motion for Leave to Amend Complaint have been denied?"[3] On the other hand, the plaintiff presents the issues by stating: "1. Whether this Court should affirm the trial court's ruling that a proper remedy for a failure to comply with the 'notice provision' of Mississippi Code Annotated Section 15-1-36(15) is to order a 60 day stay. 2. In the alternative, whether this Court should decide that the proper remedy is to dismiss the suit *without* prejudice and allow the Plaintiff to re-file her Complaint, pursuant to the 'savings clause' found in Miss. Code Ann. § 15-1-69. 3. Whether the 'discovery rule' should apply to extend the two year statute of limitations in this case,

---

[3]This is taken from Dr. Arceo's brief. St. Dominic filed a separate joinder wherein it stated that it joined the Appellant's Brief submitted by Dr. Arceo inasmuch as the arguments raised by Dr. Arceo applied equally to St. Dominic.

4

under the facts of this case, including the fraudulent concealment of certain facts by the Defendants. 4. Whether Miss. Code Ann. § 15-1-36(15) is ambiguous. 5. Whether Plaintiff should be allowed to amend her Complaint pursuant to the trial court's Order Denying Defendants' Motion to Dismiss." (Emphasis in original).

¶5.     We will restate these issues for clarity.

### WHETHER IT WAS ERROR FOR THE CIRCUIT COURT TO DENY THE DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

¶6.     This Court reviews a trial court's grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard. *Monsanto v. Hall,* 912 So.2d 134, 136 (Miss. 2005). Under Miss. Code Ann. § 15-1-36(1) (Rev. 2003), a plaintiff has two years from the date of the alleged negligent act in which to commence a lawsuit against medical providers. Also, effective from and after January 1, 2003, Miss. Code Ann. § 15-1-36(15) provides:

> No action based upon the health care provider's professional negligence may be begun unless the defendant has been given at least sixty (60) days' prior written notice of the intention to begin the action. No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered. If the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others. This subsection shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name.

¶7.     In today's case, the plaintiff wholly failed to provide any written notice to any medical provider concerning her intention to commence suit. We recently addressed this specific issue in *Pitalo v. GPCH-GP, Inc.*, 933 So.2d 927 (Miss. 2006). In *Pitalo*, the plaintiff failed

5

to provide the statutory notice prior to commencement of her negligence suit against the doctor and the hospital. In affirming the trial court's dismissal for failure to comply with section 15-1-36(15), we stated:

> On appeal, Pitalo argues that it was error for the trial court to dismiss her cause of action because she failed to send a letter to the defendant as provided in Miss. Code Ann. Section 15-1-36(15) (Rev. 2003). Miss. Code Ann. Section 15-1-36 was amended in the special session of the Mississippi Legislature on tort reform in 2002. Section 15 was added and became effective January 1, 2003. It requires that an action based on professional negligence of a health care provider may not begin unless the defendant has been given at least 60 days prior written notice of the intention to begin the action.
>
> When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute. *Claypool v. Mladineo,* 724 So.2d 373, 382 (Miss. 1998). In construing a statute, the Court must seek the intention of the Legislature, and knowing it, must adopt that interpretation which will meet the real meaning of the Legislature. *Evans v. Boyle Flying Service, Inc.,* 680 So.2d 821, 825 (Miss. 1996). When drafting Miss. Code Ann. Section 15-1-36(15), the Legislature did not incorporate any given exceptions to this rule which would alleviate the prerequisite condition of prior written notice. Simply stated, "shall" is mandatory, while "may" is discretionary. *Franklin v. Franklin,* 858 So.2d 110, 114 (Miss. 2003). Pitalo's failure to send notice of her intent to sue clearly violates the mandatory instructions concerning notice in Miss. Code Ann. Section 15-1-36(15).
>
> Pitalo contends that even though she failed to provide notice of her intent to sue, the circuit court's dismissal of her action violates our holding in *Jackson v. City of Wiggins,* 760 So.2d 694 (Miss. 2000). Pitalo's claim is clearly distinguishable from *Jackson* as the present case concerns medical negligence actions under Miss. Code Ann. Section 15-1-36 (Rev. 2003)-not the Mississippi Tort Claims Act, and Pitalo did not at any time attempt to send a notice of intent to sue to Dr. Graham or Garden Park, as had been done in *Jackson*. Pitalo's arguments do not excuse the absence of notice of an intent to sue being sent to the defendants in the present case.
>
> . . .
>
> Pitalo's failure to send to defendants a notice of intent to sue is an inexcusable deviation from the Legislature's requirements for process and notice under

6

Miss. Code Ann. Section 15-1-36(15), and such failure warrants dismissal of her claim. Accordingly we affirm the judgment of the circuit court.

933 So.2d at 928-29.

¶8. While we find that, consistent with *Pitalo*, the trial judge erred in failing to grant the defendants' motion to dismiss, or in the alternative, for summary judgment, we acknowledge that the trial judge did not have the benefit of our decision in *Pitalo* when he denied the defendants' motion. We also acknowledge that at the time the trial judge was confronted with this issue, there was a dearth of pronouncements from this Court on the recently revised Miss. Code Ann. § 15-1-36; therefore, we find no fault with the trial judge's effort to fashion a remedy consistent with this Court's prior decisions in addressing similar issues under the Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 et seq. *See, e.g.*, *Jackson v. City of Wiggins*, 760 So.2d 694, 696 (Miss. 2000); *City of Pascagoula v. Tomlinson*, 741 So.2d 224, 228-29 (Miss. 1999).[4]

¶9. We note that although the tenor of the dissent is that of a belief that our interpretation of the applicable statute brings about an unconstitutional result, the dissent does state that "[t]he constitutional right of notice to the defendants was satisfied when Myrtis Tolliver filed her complaint. The implementation and enforcement of an additional notice requirement, without any other method to cure, is inequitable, unconstitutional, and deprives this plaintiff of her day in court." Dissenting op. ¶22. Thus, to the extent that the dissent finds Miss. Code

---

[4]In our recent decision in *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So.2d 815, 819-20 (Miss. 2006), *City of Wiggins* and other cited cases were overruled as to their analysis of the 90-day notice requirement under the MTCA.

Ann. § 15-1-36(15) to be unconstitutional, we are compelled to note that none of the parties, or the amici curiae, have raised the issue of the constitutionality of the statute for our consideration in today's appeal. Accordingly, we decline to address an issue not even raised on appeal. *Martin v. Lowery*, 912 So.2d 461, 464 (Miss. 2005); *Cockrell v. Pearl River Valley Water Dist.*, 865 So.2d 357, 360 (Miss. 2004); *Corey v. Skelton*, 834 So.2d 681, 686-87 (Miss. 2003); *Pickens v. Donaldson*, 748 So.2d 684, 691-92 (Miss. 1999). Additionally, no notice challenging the constitutionality of the statute was given to the Attorney General as required by law. Miss. R. Civ. P. 24(d). *See Martin*, 912 So.2d at 465 (citing *In re D. O.*, 798 So.2d 417, 423 (Miss. 2001)); *Cockrell*, 865 So.2d at 360; *Corey*, 834 So.2d at 687; *Pickens*, 748 So.2d at 691. In sum, the issue of the constitutionality of Miss. Code Ann. § 15-1-36(15) is not before us.

¶10.    Also, the dissent cites a similar California statute and the "Borrowed Statute" doctrine as support for the proposition that our Legislature did not intend Miss. Code Ann. § 15-1-36 (15) to mandate dismissal of medical malpractice cases filed prior to full compliance with the notice requirement. However, our Legislature omitted from Miss. Code Ann. § 15-1-36 (15) the following language found in the California statute: "failure to comply with this chapter shall not invalidate any proceeding of any court of this state, nor shall it affect the jurisdiction of the court to render a judgment therein." Cal. Civ. Proc. Code § 365 (1982). While claiming it is attempting to ascertain the intent of our Legislature, the dissent fails to offer any explanation of why this specific language was omitted. We conclude that the explanation is

8

that our Legislature omitted the provision because it did not wish it to be part of our law. This explanation is perfectly consistent with the "Borrowed Statute" doctrine cited in **Pope v. Brock,** 912 So.2d 935, 938 (Miss. 2005).

¶11.    Finally, in applying the statute to today's case, we have not attempted to determine legislative intent, as stated by the dissent, but instead we have merely considered the plain language of the statute. Our application of Miss. Code Ann. § 15-1-36(15) does not deprive Myrtis Tolliver of any constitutionally endowed right. In **University of Mississippi Medical Center v. Easterling**, 928 So.2d 815, 820 (Miss. 2006), a case involving the Mississippi Tort Claims Act, we stated:

> We do so today because of our constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation. We also note that our decision today provides consistency. *E. g.*, **Newell v. Jones County**, 731 So.2d 580, 582 (Miss. 1999) (ten day time limit to file notice of appeal under Miss. Code Ann. section 11-51-75 is both mandatory and jurisdictional); **Ivy v. GMAC**, 612 So.2d 1108, 1116 (Miss. 1992) (citing **Tandy Electronics, Inc. v. Fletcher**, 554 So.2d 308, 309-312 (Miss. 1989) (thirty-day limit to file notice of appeal to Mississippi's appellate courts is a "'hard-edged, mandatory' rule which this court 'strictly enforces.'")). Since the MTCA's passage in 1993, a considerable amount of time has passed for the legal profession to become aware of the ninety-day notice requirement in section 11-46-11(1). *See* 1993 Miss. Laws 476. The result here, as in **Ivy**, is that the ninety-day notice requirement under section 11-46-11(1) is a "hard-edged, mandatory rule which the Court strictly enforces." **Ivy**, 612 So.2d at 1116.

928 So.2d at 820.[5]

---

[5]The dissent correctly points out that in **Easterling**, we required "strict compliance" with section 11-46-11(1), pertaining to the 90-day notice requirement, while, at the same time, we continued to adhere to what has been termed "substantial compliance" regarding section 11-46-11(2) and what is required to be contained in the notice. 928 So.2d 819-20. (Dissenting

9

¶12. In ***Townsend v. Estate of Gilbert***, 616 So.2d 333 (Miss. 1993), this Court found that a four-year statute of limitations, as opposed to a six-year statute of limitations, was applicable to the case under consideration and that the four-year statute of limitations was not unconstitutional, either on its face or in its application. ***Id.*** at 337. "There is no absolute right of access to the courts. All that is required is a *reasonable* right of access to the courts – a reasonable opportunity to be heard." ***Wayne v. Tenn. Valley Auth***., 730 F.2d 392, 403 (5th Cir. 1984) (cited with approval in ***Townsend***, 616 So. 2d at 337).

¶13. While the right under our state and federal constitutions to access to our courts is a matter beyond debate, this right is coupled with responsibility, including the responsibility to comply with legislative enactments, rules, and judicial decisions. While the plaintiff in today's case had the constitutional right to seek redress in our state courts for the unfortunate death of her daughter, she likewise had the responsibility to comply with the applicable rules and statutes, including section 15-1-36(15). Any different approach would render meaningless any rule or statute setting time limitations on litigants.

---

op. ¶28). *See also* **South Cent. Reg'l Med. Ctr. v. Guffy**, 930 So.2d 1252 (Miss. 2006). The dissent goes further and states that while we have followed a "middle-of-the-road approach" to our interpretation of MTCA cases, we have adopted a strict compliance standard pertaining to our application of the medical malpractice statute. However, with all due respect to the dissent, today's case does not involve a question of whether the plaintiff complied with section 15-1-36(15) by submitting a notice containing information which was substantial enough to be in compliance with the statute. *See* **Guffy**, 930 So.2d at 1258. Instead, we are squarely confronted with a situation where the plaintiff, in filing an original complaint, a first amended complaint, and a second amended complaint, wholly failed to submit *any notice* required by the statute.

¶14. Our decision in ***Pitalo*** controls today's case. Likewise, our decision today is not only consistent with our holding in ***Pitalo***, but is likewise consistent with our recent decision in ***Walker v. Whitfield Nursing Ctr., Inc.***, 931 So.2d 583 (Miss. 2006) (this Court affirmed trial court's grant of medical provider's motion for summary judgment based on plaintiff's failure to comply with the provisions of Miss. Code Ann. § 11-1-58 (Rev. 2002) concerning filing with the complaint an attorney's certificate of consultation with a qualified medical expert). We are thus constrained to find, as a matter of law, that the trial court erred in failing to grant the defendants' motion to dismiss, or in the alternative, for summary judgment.

¶15. Because of our disposition of the statutory notice issue consistent with our recent decision in ***Pitalo***, the remaining issues raised by the parties need not be addressed.

## CONCLUSION

¶16. For the reasons stated, the order denying the defendants' motion to dismiss, or in the alternative, for summary judgment, entered by the Circuit Court for the First Judicial District of Hinds County is reversed, and judgment is rendered here in favor of Salvador Arceo, M.D., and St. Dominic–Jackson Memorial Hospital, dismissing Myrtis Tolliver's second amended complaint and this action without prejudice.

¶17. **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND COBB. P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.**

**GRAVES, JUSTICE, DISSENTING:**

11

¶18. My colleagues have concluded that since Myrtis Tolliver failed to strictly comply with the notice provisions of Miss. Code Ann. Section 15-1-36(15), the Hinds County Circuit Court erred in failing to grant the defendants' motion to dismiss, or in the alternative, for summary judgment. However, based upon the lack of legislative history surrounding Section 15-1-36, we are left in a legal quagmire when attempting to ascertain the actual intent of the Legislature in adopting this statute. Nevertheless, the strict compliance standard adopted by the majority only serves to deny the citizens of this State their right to bring claims before the courts for adjudication. For this reason, I cannot embrace the majority's draconian interpretation of Section 15-1-36.

¶19. Since the Legislature did not provide any clear evidence of its overall intent, I am compelled to review the law of several other states which have pre-suit notice requirements. The provisions of the statutes requiring pre-suit notice in these states have been uniformly interpreted to favor access to the courts. The State of New Mexico has a statutory pre-suit requirement which states that "no malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered." N.M.S.A. 1978, Section 41-5-15 (1976). In *Jiron v. Mahlab,* 659 P.2d 311 (N.M. 1983), a patient and her husband sued the patient's physician for medical malpractice before seeking or obtaining review by the Medical Review Commission in order to acquire personal jurisdiction over the defendant before he left the country. The district court dismissed the case for lack of subject-matter jurisdiction. The Supreme Court of New Mexico granted certiorari and reversed and remanded. The court in *Jiron* specifically stated:

12

The right of people to petition the government for a redress of grievances is guaranteed by the First Amendment to the United States Constitution. Both the United States and the New Mexico Constitutions prohibit a State from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, Section 1; N.M. Const., Art. II, Section 18.

The right of access to the courts is one aspect of the right to petition. *California Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). A person should not be deprived of the right to access the courts without due process of law. In *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the United States Supreme Court held that due process prohibits a state from denying, solely because of inability to pay fees and costs, access to the its courts to individuals who seek judicial dissolution of their marriages. The Court stated that '[w]ithout this guarantee that one may not be deprived of his rights, neither liberty nor property, without due process of law, the State's monopoly over techniques for binding conflict resolution could hardly be said to be acceptable.' *Id.* at 375, 91 S.Ct. at 784. The institution of the Medical Review Commission as a forum for screening medical malpractice claims appears to work well in most instances. Nevertheless, when a statute or rule operates to deprive an individual of a protected right, it may be held constitutionally invalid as applied to that individual. Id.

659 P.2d at 312.

¶20. In reviewing Mississippi case law, Justice Michael Sullivan of this Court offered similar reasoning in his dissenting opinion in *Robinson v. Stewart,* 655 So.2d 866 (Miss. 1995), when discussing sovereign immunity:

> The majority incorrectly holds that sovereign immunity does not violate the "remedy clause" of the Mississippi Constitution . . . .
> . . . Miss. Const. Art. III, sec. 24 states:
> All courts shall be open; and *every person for an injury done to him,* in his land, goods, person or reputation, *shall have a remedy by due course of the law*, and *right and justice shall be administered*, *without* sale, *denial*, or delay.
> (Emphasis added).While this clause does not explicitly grant an infinite, unlimited guarantee to seek a remedy by due course of law, a statute which

13

denies a potential litigant *any* possibility of bringing suit violates its clear meaning.

655 So. 2d at 870-71 (Sullivan, J.,dissenting).

¶21.    While Miss. Code Ann. Section 15-1-36(15) does not preclude the possibility of a potential litigant receiving *any* potential relief, it is clear that the majority's interpretation of Miss. Code Ann. Section 15-1-36(15) deprives individuals of the right to access the courts. Clearly, it deprives Myrtis Tolliver (as an individual) of her First Amendment right to seek a redress of her grievance in a court of law. Specifically, the First Amendment states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.   Furthermore, four U.S. Supreme Court Justices have stated the following in *Talamini v. Allstate Insurance Co.,* 470 U.S. 1067, 105 S.Ct. 1824, 85 L. Ed. 2d 125 (1985):

> Freedom of access to the courts is a cherished value in our democratic society. Incremental changes in settled rules of law often result from litigation. The courts provide the mechanism for the peaceful resolution of disputes that might otherwise give rise to attempts at self-help. There is, and should be, the strongest presumption of open access to all levels of the judicial system. Creating a risk that the invocation of the judicial process may give rise to punitive sanctions simply because the litigant's claim is unmeritorious could only deter the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means. This Court, above all, should uphold the principle of open access.

*Id*. at 1070-71 (Stevens, J., concurring in the dismissal for want of jurisdiction and in the denial of certiorari) (footnotes omitted).

14

¶22. The law, as interpreted by the majority, definitely is not in keeping with this principle, but is in fact irrational, illogical, and unfair to those Mississippians seeking a redress of their grievance in a medical malpractice claim. Furthermore, the application of the pre-suit notice requirement, as interpreted by the majority, unnecessarily restricts access to the courts. The constitutional right of notice to the defendants was satisfied when Myrtis Tolliver filed her complaint. The implementation and enforcement of an additional notice requirement, without any other method to cure, is inequitable, unconstitutional, and deprives this plaintiff of her day in court.

¶23. The majority is correct when it states that none of the parties have raised the issue of the constitutionality of the statute for consideration in the appeal. Therefore, it is the majority's rightful prerogative to avoid addressing that issue on appeal. However, I offer no opinion as to the **constitutionality** of Section 15-1-36. What I find unconstitutional is the majority's **strict compliance requirement** of the statute in the instant case. It is the majority's requirement of strict compliance which denies the plaintiff her right of due process under the Fourteenth Amendment and denies her the right of redress under the First Amendment. What this case has is two alleged tortfeasors, one dead child, and zero opportunities for redress in the courts. The result reached by the majority is the ultimate exaltation of form over substance.

¶24. The California Code of Civil Procedure 364 states that "no action upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." In addition, the statute

15

also provides that "failure to comply with this chapter shall not invalidate any proceeding of any court of this state, nor shall it affect the jurisdiction of the court to render a judgment therein..." Cal. Civ. Pro. 365. This statute is similar to that found in Miss. Code Ann. Section 15-1-36(15). While statutory interpretation by another state's supreme court is not binding upon this Court, under the "Borrowed Statute" doctrine, this Court may consider a sister state's interpretation of its statutes where there is clear evidence that our Legislature consciously borrowed statutory language from that state's enactment. *Pope v. Brock,* 912 So.2d 935, 938 (Miss. 2005). The Legislature did rely upon the California model in drafting Section 15-1-36(15); therefore, some degree of deference should be given to the fact that the California model contains a section allowing access to the courts even if the plaintiff did not comply with the pre-suit notice requirement. The Florida Supreme Court has also weighed in on the issue as it pertains to its pre-notice statute, Fla. Stat. Ann. Section 766.106. In *Patry v. Capps,* 633 So.2d 9, 13 (Fla. 1994), the Florida Supreme Court stated "that when possible the pre-suit notice and screening statute should be construed in a manner that favors access to the courts." Likewise, Section 15-1-36(15) should not be strictly interpreted to bar a plaintiff from seeking adjudication of a claim for failure to comply with the pre-suit notice.

¶25. The majority seeks to establish a lucid and consistent interpretation of Section 15-1-36(15), but its adoption of a strict compliance standard only succeeds to imbalance the scales of justice where ordinary citizens are denied their rightful day in court. The Texas Supreme Court construed a statute almost identical to the one applied in this case. However, unlike the majority in this case, the Texas Supreme Court reconciled the mandatory provisions of its pre-

16

suit notice statute and the right of an individual to have access to the courts by requiring an abatement of the cause of action for a duration of sixty (60) days. Specifically, the court in *Scheppps v. Presbyterian Hospital of Dallas,* 652 S.W.2d 934 (Tex. 1983), stated:

> The intent of the Keeton Commission and the Legislature was to encourage pre-suit negotiations so as to avoid excessive cost of litigation. This likewise can be accomplished by requiring an abatement of the cause of action for a duration of sixty days in the event that plaintiff fails to give required notice, and at the same time protect plaintiff's right to maintain that lawsuit. For these reasons we find no inconsistency in holding the provision mandatory, yet only subjecting the cause to abatement. Accordingly, we hold that in any medical malpractice action subject to article 4590i, where a plaintiff has failed to give notice sixty days prior to the filing of suit, upon motion of the defendant, the cause should be abated for sixty days. The case is remanded to the trial court for disposition not inconsistent with this opinion.

*Id.* at 938.

¶26.     Likewise, in the instant case, the trial judge abated the action for a period of sixty (60) days. This ruling by the trial judge was fair, just, and equitable to all parties involved. However, instead of applying the same sound reasoning as the Texas Supreme Court, the majority has chosen to implement an unfair, unjust, and inequitable resolution by requiring strict compliance with the pre-suit notice provision. The majority cavalierly treats legislative intent as if it is irrelevant. Legislative intent is not irrelevant. *Alexander v. Graves,* 178 Miss. 583, 173 So. 417, 419 (1937). Assuming that the intent of the Legislature was to give notice of claims to alleged tortfeasors, then a sixty day abatement of the lawsuit with a directive to send the notice certainly accomplishes that intent. If the intent was to allow time for resolution of a claim, then a sixty day abatement of the action allows time for that resolution to occur. In *Alexander* this Court stated:

17

In construing statutes, the court desires to reach a conclusion in harmony with the intent and purpose of the Legislature, and if the Legislature acts within constitutional limits, the court will give effect to its statutes according to the terns [sic] and intendment of the Legislature, ascertained according to recognized rules of statutory construction.

173 So. at 419 (quoting *Maris v. Lindsey,* 124 Miss. 742, 774-75, 87 So. 12, 15 (1920)).

¶27.    In *Carpenter v. Reinhard,* 345 F. Supp. 2d 629 (N.D. Miss. 2004), District Judge Mills made the following observations concerning the Medical Malpractice Tort Reform Act of 2002 ("MMTRA") and the Mississippi Tort Claims Act ("MTCA"):

In comparing the notice provisions of Section 15-1-36(15) and Section 11-46-13, the   Court notes that the MTCA's notice provision is clearly more stringent than that of   the MMTRA. Persons who seek to sue a physician under the MMTRA must only provide 'the defendant' with written notice of the intent to bring the action. No particular form of notice is required, except that the notice must inform the physician-defendant of the legal basis of the claim and the type of loss suffered (including the nature of the injuries with specificity). There is no requirement regarding how the notice is to be delivered to the defendant. In contrast, notice under the MTCA must be written, must be delivered 'in person or by registered or certified United States mail," and must contain 'a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the   injury, and the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.'
After comparing the two statutes and considering the way in which the Mississippi Supreme Court has interpreted the MTCA's notice provision, this Court is of the opinion that the Mississippi Supreme Court would require only substantial compliance with 15-1-36(15) rather than strict compliance as the defendant urges.

*Id.* at 632.

¶28.    However, subsequent to Judge Mills making his comparative observations concerning the pre-suit  notice requirements of the MMTRA and the pre-suit notice requirements of the

18

MTCA, this Court once again shifted its position concerning the pre-suit notice requirement as it applied to the MTCA. In *University of Mississippi Medical Center v. Easterling,* 928 So.2d 815 (Miss. 2006), this Court stated:

> Since its creation in 1993, the MTCA has undergone numerous amendments requiring evolving interpretation by the Mississippi Supreme Court. When the MTCA was enacted, this Court interpreted the notice of claim requirement under a strict compliance standard; however, in early 1999, we began applying a substantial compliance standard to notice of claim. The language of the statute at that time required a plaintiff to file notice of claim before the expiration of the one year statute of limitations, the filing of which tolled the statute of limitations for ninety-five days. Miss. Code Ann. Section 11-46-11 (Supp. 1998). The first ninety days of this ninety-five days was designated for the benefit of the defendant to investigate and attempt settlement of the claim prior to facing a lawsuit. *Tomlinson,* 741 So.2d at 228. However, the old statute created a limited time frame in which a plaintiff could file a suit and was very difficult to comply with, causing the Court to retreat to the substantial compliance standard. However, in April of 1999, the Legislature amended Miss. Code Ann. Section 11-46-11 to remedy this concern. *Tomlinson* is distinguished from this case because its holding was based on the pre-1999 legislative amendment to Section 11-46-11, and Easterling's claim is not. This Court finds Easterling failed to comply with the ninety-day notice requirement when she filed suit on September 19, 2002, almost four months before giving notice.
>
> In order to make it perfectly clear to all that strict compliance is required, as stated in *Davis* and *Wright*, we hereby overrule *Tomlinson* and its progeny, including *Booneville, Givens, City of Wiggins, Mississippi School for Blind,* and *Clay County,* but only as to those cases' analysis of the ninety-day notice requirement. In other words, the rule set forth in *Tomlinson*, that the responsibility falls on the defendant to request a stay of the lawsuit when a plaintiff is not in compliance with the ninety-day notice requirement, is abrogated.

928 So.2d at 819-20.

19

¶29.    This Court continued to re-define its position concerning the proper application of the MTCA pre-suit notice in ***South Central Regional Medical Center v. Guffy***, 930 So.2d 1252, 1257-58 (Miss. 2006):

> While ***Easterling*** is limited to its holding in the ninety-day notice requirement, the MTCA requires persons wishing to file suit against a 'governmental entity or its employee' to provide notice 'ninety (90) days prior to maintaining an action,' and to provide a 'short and plain statement of facts upon which the claim is based.' *See also* ***Easterling***, — So.2d at —, 2006 WL 871302 *4-5. Pursuant to Miss. Code Ann. Section 11-46-11(2), there are seven categories of information which must be included. The seven required categories are as follows: (1) circumstances which brought about the injury; (2) the extent of the injury; (3) the time and place the injury occurred; (4) the names of all persons known to be involved; (5) the amount of money damages sought; (6) the residence of the person making the claim; and (7) the time of filing the notice.... The wording, 'substantial compliance' with the requirements of Miss. Code Ann. Section 11-46-11(2), contained in many of this Court's opinions regarding the application of Mississippi Code Ann. Section 11-46-11(2) causes confusion and needs to be addressed by this Court today  in order to provide direction and clarity to the courts and the bar. See, e.g. ***Fairley,*** 871 So.2d at 716; ***Gale v. Thomas,*** 759 So.2d at 1158; ***McNair v. Univ. of Miss. Med Ctr.,*** 742 So.2d at 1080; ***Carr v. Town of Shubuta,*** 733 So.2d at 263; ***Reaves ex rel. Rouse v. Randall,*** 729 So.2d at 1240.
>
> The confusion has arisen in the discussion of Miss. Code Ann. Section 11-46-11(2),  as to how much information is required by this Court under each of the seven categories to comply with Miss. Code Ann. Section 11-46-11(2). As a practical example, the first category requires notice of the 'circumstances which brought about the injury.' In order to comply with this requirement, the notice need not disclose every single fact, figure and detail, but rather the substantial details, in order to comply with the requirements of Miss. Code Ann. Section 11-46-11(2).

¶30.    This Court has opted to require strict compliance in  the actual delivery of the pre-suit notice under the MTCA, while still clinging to the substantial compliance standard when deciphering what the pre-suit notice under the MTCA must contain. The middle-of-the-road

approach used by this Court when interpreting the MTCA pre-suit notice requirement is certainly not afforded to those whose claims fall under the MMTCA. Instead, for a MMTCA claim, the majority adopts a strict compliance standard.

¶31.    Moreover, as the United States Supreme Court stated in ***Logan v. Zimmerman Brush Co.,*** 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982), "a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." The majority's requirement of strict compliance with section 15-1-36(15) clearly denies, without due process of law, the plaintiff's right to pursue her claim. Unquestionably, that denial violates the Fourteenth Amendment to the U.S. Constitution which states in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend XIV, § 1.

¶32.    The majority concedes that "[w]hile the plaintiff in today's case had the constitutional right to seek redress in our state courts for the unfortunate death of her daughter, she likewise had the responsibility to comply with the applicable rules and statutes, including section 15-1-36(15)." Maj. Op. ¶13.    Apparently, the majority can acknowledge a constitutional right and then conclude that this Court has the power to erect a barrier to deny a litigant that constitutionally guaranteed right.

¶33.    The plaintiff's cause of action is a property interest. ***Logan***, 455 U.S. at 428. The result reached by the majority deprives the plaintiff of her property interest (cause of action) without due process of law.    Hence, the result reached by the majority violates both the First and

21

Fourteenth Amendments of the United States Constitution. I would affirm the trial court's order denying the defendants' motion to dismiss or for summary judgment and remand this case for further proceedings. Therefore, I respectfully dissent.

**DIAZ, J., JOINS THIS OPINION**.