# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-IA-01596-SCT
## CONSOLIDATED WITH
## NO. 2006-CA-01629-SCT

*COMMUNITY HOSPITAL OF JACKSON, MISSISSIPPI d/b/a COMMUNITY NURSING HOME FOUNDATION, INC., MICHELLE DANIEL AND DERWOOD BOYLES*

*v.*

*BERNADETTE GOODLETT, BY AND ON BEHALF OF SARAH GOODLETT*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/2006 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARJORIE SELBY BUSCHING |
| | STEVEN MARK WANN |
| | HEATHER M. ABY |
| ATTORNEYS FOR APPELLEE: | JOHN PRESTON SCANLON |
| | JOHN F. HAWKINS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 09/20/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Bernadette Goodlett brought suit against Community Hospital of Jackson, Mississippi, Michelle Daniel, and Derwood Boyles in the Clay County Circuit Court by and on behalf of her mother, Sarah Goodlett, alleging negligence, negligence per se, respondeat superior, and breach of contract due to decubitus ulcers Sarah developed during her stay in the nursing home. After a transfer of venue to the Circuit Court of the First Judicial District of Hinds

County, the defendants filed a Motion to Dismiss, or in the Alternative, to Stay Proceedings and Enforce Arbitration Agreement, which was denied by the trial court. This Court granted the defendants' petition for interlocutory appeal in cause number 2006-IA-01596-SCT, consolidated that cause with cause number 2006-CA-01629-SCT, and stayed all proceedings in the trial court pending this Court's decision. Finding error in the trial court's order denying the defendants' motion to dismiss, we reverse the trial court's order and remand this case to the Circuit Court of the First Judicial District of Hinds County for entry of an order consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.    Sarah Goodlett (Sarah) was admitted to Community Hospital of Jackson, Mississippi (Community),[1] on February 9, 2004. Sarah's daughters, Bernadette[2] and Carolyn, signed the admission agreement, which also contained an arbitration agreement. Sarah did not sign the admission agreement, as she was unable to sign her name due to complications from a previous stroke. Pat Clack signed as the Facility Representative, and Connie Rex signed as a witness. Neither Bernadette nor Carolyn signed or initialed any individual provision of the contract. Bernadette signed a separate document entitled Resident's Rights.

---

[1]Community Nursing Home Foundation, Inc., is a non-profit corporation formed for the purpose of being a charitable organization to provide support for Community Hospital of Jackson, Mississippi, and was never involved in Sarah's care. Community Nursing Home Foundation, Inc., filed a Separate Motion to Dismiss on September 22, 2005. The parties agreed to dismiss Community Nursing Home Foundation, Inc.

[2]Because "Bernadette" appears with different spellings throughout the record, we will use "Bernadette," as styled, for clarity.

2

¶3.     Sarah developed two decubitus ulcers during her stay at Community which required surgery on August 20, 2004. Bernadette first gave notice by way of a letter to Community of her intention to file suit and requested assistance to expedite the process[3] on August 31, 2004. This letter erroneously stated that Sarah's leg had been amputated:

> This letter is being sent pursuant to Section 15-1-36(15) of the Mississippi Code of 1972, as amended. This letter is to inform you of our intention to begin action on behalf of Ms. Sarah Goodlett. The basis of the suit is negligence and gross negligence in the care and treatment of Ms. Goodlett at Community Nursing Home, which led to further amputation of her leg.
>
> I have not had the opportunity to obtain records and to have them reviewed by an expert witness. It may be that after such review, we determine that there is no basis for suit. If you are in a position to expedite this process, your assistance would be appreciated.

Michelle Daniel, Community's administrator, sent a reply letter stating that Sarah's leg was not amputated and that Bernadette's counsel must have mistaken Sarah for someone else. On September 8, 2004, Bernadette's counsel sent Daniel another letter, clarifying that the suit was being filed due to decubitus ulcers and again requesting assistance to expedite the process:

> This letter is being sent pursuant to Section 15-1-36(15) of the Mississippi Code of 1972, as amended. Please disregard my August 31, 2004 letter. This letter is to inform you of our intention to begin action on behalf of Ms. Sarah Goodlett. The basis of the suit is negligence and gross negligence in the care and treatment of Ms. Goodlett at Community Nursing Home, which led to hospitalization and surgery to treat her decubitus ulcer.

---

[3]Community argues that this document was not a request for medical records, but rather a simple notice of intention to file suit, per the language of the letter. Because our decision does not rest on this issue, we decline to discuss this issue today.

3

I have not had the opportunity to obtain records and to have them reviewed by an expert witness. It may be that after such review, we determine that there is no basis for suit. If you are in a position to expedite this process, your assistance would be appreciated.

¶4. On October 7, 2004, Bernadette's counsel sent Daniel another letter, allegedly accompanied by a medical authorization[4] signed by Bernadette authorizing the release of Sarah's medical records. On October 20, 2004, Daniel sent Bernadette's counsel a reply letter stating she did not believe that the HIPAA Authorization Form signed by Bernadette was adequate, because Bernadette did not have power of attorney for Sarah. Thus, Daniel refused to provide Sarah's records without Sarah's consent, as this would be a violation of HIPAA. On October 26, 2004, Bernadette's counsel sent Daniel a letter, stating:

> With respect to your refusal to provide Ms. Goodlett's medical chart pursuant to 45 CFR § 164.502, I believe you are in violation of that section rather than complying with it. I direct your attention to 164.502(g)(1) and (4) (sic). These sections clearly state that my client, *as the personal representative of the deceased*, must be provided the chart. Section 164.502(a)(1)(I) permits you to disclose Ms. Goodlett's records to my client. I ask again that you provide the complete medical chart immediately pursuant to Section 164.502(a)(1)(I).

(Emphasis added). On October 28, 2004, Daniel responded in a letter, stating:

> We recently received a request from you, dated October 26, 2004, for the medical records related to the above-mentioned resident. In your letter, you stated that Ms. Goodlett is deceased. **Ms. Goodlett is CURRENTLY a resident, and therefore NOT deceased.** In addition, **both** of her decubitus ulcers have been **healed**. She has been participating in group activities and states that she is "very happy to be better."

_____

[4]Community's brief states that this referenced authorization enclosure was not included with the letter, neither does it appear in the record.

Although we have noted your letter dated October 7, 2004, we do not believe the authorization is adequate. Ms. Goodlett's daughters (Bernadette and Carolyn) have signed the HIPAA Authorization Form, **they do not have Power of Attorney or any other legal authority over their mother. Ms. Sarah Goodlett is paralyzed, but she is of sound mind.** To this date, I have no proof of any physician stating Ms. Goodlett is mentally incompetent. It is a violation of Ms. Sarah Goodlett's rights to give her medical records to an attorney without her consent.

(Emphasis in original).

¶5. On December 27, 2004, Bernadette filed suit against Community,[5] Daniel, and Boyles[6] allegedly by and on behalf of Sarah in the Clay County Circuit Court claiming negligence, negligence per se, respondeat superior, and breach of contract. Bernadette attached an Attorney Certificate, rather than a Certificate of Expert Consultation as required by Miss. Code Ann. § 11-1-58(1) (Supp. 2004), which stated:

2. Plaintiff has requested the *decedent's* medical records, and the records have not been produced. Plaintiff will provide a certificate of expert consultation within ninety (90) days of production of the records.

(Emphasis added). On February 15, 2005, Bernadette's counsel sent Community a letter along with an authorization to obtain Sarah's medical records. Also included was a General Power of Attorney, which stated:

I, Sarah Catherine Goodlett, resident of Hinds County, Mississippi, appoint Bernardett (sic) Goodlett, a resident of Hinds County, Mississippi, as my true and lawful attorney-in-fact with unlimited power and authority to do and

---

[5]We will refer to Defendants Community, Daniel, and Boyles collectively as "Community" for clarity.

[6]Boyles is the licensee of Community.

5

perform every act that [I] might, under any circumstances whatsoever, do myself and to do these things as fully as I might do if I were present.

A review of this document reveals that there is an "X" on the signature line for Sarah Catherine Goodlett, and that the document was executed and notarized on January 19, 2005. Sarah was unable to sign her name due to her stroke.

¶6. On April 13, 2005, Community filed a motion for a change of venue in the Clay County Circuit Court, requesting that the case be transferred to the Hinds County Circuit Court, where venue was proper. On August 4, 2005, the Clay County Circuit Court entered an agreed order transferring venue to the Circuit Court of the First Judicial District of Hinds County.

¶7. On September 22, 2005, Community filed a Motion to Dismiss, or in the Alternative, to Stay Proceedings and Enforce Arbitration Agreement in the Hinds County Circuit Court. On September 29, 2005, Bernadette's counsel sent Community's counsel a letter stating that Sarah had signed a HIPAA release that day at the nursing home, using an "X" for her signature, and requesting Sarah's medical records. On October 13, 2005, Bernadette executed an affidavit which stated:

> 1. On February 9, 2004, I signed an Admission Agreement as required to admit my mother, Sarah Goodlett, to the Community Nursing Home. At that time, I did not have a power of attorney or any other legal authorization to enter into contracts or waive my mother's rights. Nevertheless, the nursing home required my signature and I signed for the purpose of ensuring, as best I could, that my mother received the much needed healthcare I could not provider (sic) for her.
>
> 2. In the agreement on page 5 there was a section that said "Arbitration–please read carefully." By that section, there was a spot for

6

someone's initials. I reviewed the section and did not agree to arbitrate. By not initialing that section, I indicated that, to the extent my signature or initials could be argued to bind my mother, I would not agree to the arbitration provision.

3.      Also, I verbally informed Pat Clack, who was the representative of the Community Nursing Home, that, to the extent she sought my agreement to arbitrate, I would not agree to arbitration. I further told Ms. Clack that if anything happened to my mother, I wanted to be able to sue in a court of law.

4.      Ms. Clack pressured me for two weeks to initial the arbitration agreement. I repeatedly informed her that I would not agree to arbitrate or purport to waive my mother's rights, and she understood that when I signed the admission agreement I was expressly not agreeing to arbitrate.

¶8.      On November 3, 2005, Bernadette's counsel filed a document entitled "Certificate of Expert Consultation." On August 30, 2006, the Hinds County Circuit Court, Judge Tomie T. Green, presiding, denied Community's Motion to Dismiss, or in the Alternative, to Stay Proceedings and Enforce Arbitration Agreement. In her order, the trial judge stated, *inter alia*:

> The court finds that the Plaintiff has *substantially complied with* the medical malpractice statutes and further finds that the arbitration agreement is unenforceable in that the nursing home agreement to arbitrate was not signed by Sarah Goodlett. Thus, the motions are not well taken and should be denied.

(Emphasis added). Community thereafter filed a Petition for Interlocutory Appeal and Request for Stay with this Court, which this Court granted on October 24, 2006. In the same order, cause number 2006-IA-01596-SCT was consolidated with 2006-CA-01629-SCT.

## DISCUSSION

¶9.      "This Court reviews de novo a trial court's grant or denial of a motion to dismiss." *Penn. Nat'l Gaming, Inc. v. Ratliff*, 954 So. 2d 427, 430 (Miss. 2007) (citing *Harris v. Miss.*

7

***Valley State Univ.***, 873 So. 2d 970, 988 (Miss. 2004)). "When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim." ***Id.*** at 430-31. "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." ***Id.*** at 431 (citing ***Blackburn v. City of Marshall***, 42 F.3d 925, 931 (5th Cir. 1995)). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." ***Id.*** "We apply a de novo standard when reviewing a decision on a motion to compel arbitration." ***Bedford Care Center-Monroe Hall, LLC v. Lewis***, 923 So. 2d 998, 999 (Miss. 2006) (citing ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 714 (Miss. 2002); ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 721 (Miss. 2002)).

¶10.    Community presents two issues to this Court for decision: (1) whether the trial court erred in refusing to grant the Defendants' Motion to Dismiss for Plaintiff's failure to comply with the mandates of Miss. Code Ann. § 11-1-58 (Supp. 2004); and (2) whether the trial court erred in refusing to enforce the arbitration agreement. However, because the case *sub judice* turns on the first issue, we need only discuss that issue. We restate this issue here for the sake of clarity in discussion.

**WHETHER THE TRIAL COURT ERRED IN DENYING THE DEFENDANTS' MOTION TO DISMISS FOR PLAINTIFF'S FAILURE TO COMPLY WITH THE STATUTE.**

¶11.    Community argues that Bernadette failed strictly to comply with Miss. Code Ann. § 11-1-58(1)(a), which states:

8

(1)  In any action against a licensed physician, health care provider or health care practitioner for injuries or wrongful death arising out of the course of medical, surgical or other professional services where expert testimony is otherwise required by law, the complaint shall be accompanied by a certificate executed by the attorney for the plaintiff declaring that:

> (a)  The attorney has reviewed the facts of the case and has consulted with at least one (1) expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence and who the attorney reasonably believes is knowledgeable in the relevant issues involved in the particular action, and that the attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of such action; . . .

Miss. Code Ann. § 11-1-58(1)(a) (Supp. 2004). Community argues that since Bernadette's counsel did not attach this certificate to the complaint, Bernadette's suit should be dismissed.

However, Bernadette argues that she did strictly comply with the statute, and directs this Court to Miss. Code Ann. § 11-1-58(4), which states:

> If a request *by the plaintiff* for the records of the *plaintiff's* medical treatment by the defendants has been made and the records have not been produced, the plaintiff shall not be required to file the certificate required by this section until ninety (90) days after the records have been produced.

Miss. Code Ann. § 11-1-58(4) (Supp. 2004) (emphasis added).  Thus, Bernadette argues that, through her counsel, she requested Sarah's medical records before filing suit, and that since Community failed to turn over Sarah's records, Bernadette may avail herself of Miss. Code Ann. § 11-1-58(4).  On the other hand, Community argues that Sarah is the *true plaintiff*, or real party in interest, and Bernadette did not obtain power of attorney over Sarah's affairs until *after* the lawsuit in the case *sub judice* was filed.  Community further argues that since

Sarah was never declared incompetent, only Sarah could authorize the release of her medical records; therefore, Sarah, and not Bernadette, was required to sign the authorization *prior* to filing suit.

¶12. We agree that only Sarah had standing to bring suit; therefore, only Sarah had the right to obtain her medical records, as Bernadette, by her own sworn admission, "did not have a power of attorney or any other legal authorization" to act on behalf of her mother "to enter into contracts or waive my mother's rights" to obtain records. ***Owen & Galloway, L.L.C. v. Smart Corp.***, 913 So. 2d 174, 178-79 (Miss. 2005). Since Bernadette obtained Sarah's authorization only after filing suit, Bernadette simply jumped the gun in filing suit without meeting the requirements of section 11-1-58.

¶13. Additionally, this Court announced in ***Walker v. Whitfield***, 931 So. 2d 583, 588-90 (Miss. 2006), that a plaintiff must *strictly* comply with, rather than substantially comply with, the directives of Miss. Code Ann. § 11-1-58. Because Bernadette failed to strictly comply with the statute, the trial court erred in denying the defendants' motion to dismiss on the basis that the plaintiff had "substantially complied with the medical malpractice statutes."

## CONCLUSION

¶14. For the reasons stated, the trial court's order denying the defendants' motion to dismiss due to the plaintiff's failure to comply with Miss. Code Ann. § 11-1-58, is reversed; and, since the trial court is in a better position to know whether the order of dismissal should be with or without prejudice, this case is remanded to the Circuit Court of the First Judicial District of Hinds County for entry of an order consistent with this opinion.

10

¶15.    **REVERSED AND REMANDED.**

        **SMITH, C.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND IN RESULT. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. WALLER, P.J., NOT PARTICIPATING.**

        **DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶16.    I cannot join the majority for a number of reasons: first, because the defendants have never challenged Bernadette's standing, they have waived the defense of noncompliance; second, even if dismissal is warranted as the majority concludes, the plaintiff should be afforded an opportunity to remedy any alleged procedural defect; and third, dismissal is not the appropriate sanction for noncompliance.

        **I. The Defendants Have Waived the Defense of Noncompliance.**

¶17.    Bernadette Goodlett is the plaintiff in this action and her standing to sue has never been challenged. As the plaintiff, she has strictly complied with all of the statutory prerequisites to filing suit mandated by our case law. *Walker v. Whitfield*, 931 So. 2d 583 (Miss. 2006). Bernadette sent a letter of her intent to file suit as required by Mississippi Code Section 15-1-36 on September 8, 2004. On October 7, 2004, she sent an executed HIPAA form requesting her mother's medical records. Eighty-one days later, she filed suit without a certificate of consultation under the exception provided in Mississippi Code Section 11-1-58(4). On October 7, 2005, the defendants provided the plaintiff with her mother's medical records. Less than a month later, and well before the ninety-day deadline provided in Section 11-1-58(4), the plaintiff submitted her certificate of expert consultation.

11

¶18. Because the defendants have never challenged Bernadette's standing to sue, they have waived this issue as it relates to noncompliance. It is true that standing may be challenged at any time, even sua sponte by this Court. *Benedict v. City of Hattiesburg*, 693 So. 2d 377, 381 (Miss. 1997). This is because a lack of standing robs the court of jurisdiction, and a lack of subject matter jurisdiction is a defense that cannot be waived. *See Pruitt v. Hancock Med. Ctr.*, 942 So. 2d 797, 801 (Miss. 2006) (quoting *McNair v. United States Postal Service*, 768 F.2d 730, 737 (5th Cir. 1985)); *Bullock v. Roadway Express, Inc.*, 548 So. 2d 1306, 1308 (Miss. 1989); M.R.C.P. 12(h)(3). However, neither the majority nor the defendants address the standing issue in terms of jurisdiction, but rather as a tool for statutory interpretation. While we have stated that noncompliance with notice provisions is jurisdictional, we have also held that failure to assert noncompliance can constitute a waiver. For example, in *Gale v. Thomas*, 759 So. 2d 1150, 1159 (Miss. 1999), this Court held that even though the notice provisions of the Mississippi Tort Claims Act are jurisdictional, noncompliance with these provisions may not be raised for the first time on appeal. Accordingly, because this is an issue of compliance with the provisions of Section 11-1-58, and not a jurisdictional question, I find that the defendants have waived the defense of noncompliance by failing to raise the standing issue before standing was acquired.

**II. Plaintiffs should be Afforded the Opportunity to Remedy Procedural Defects.**

¶19. For the second time in just over a year this Court is changing its position on the appropriate remedy for noncompliance by holding that "the trial court is in a better position to know whether the order of dismissal should be with or without prejudice." In *Walker v.*

12

*Whitfield*, 931 So. 2d 583, 592 (Miss. 2006), this Court held that failure to comply with Section 11-1-58 is equivalent to a failure to state a claim, and therefore, the case was dismissed *with* prejudice. Later, in *Arceo v. Toliver*, 949 So. 2d 691, 698 (Miss. 2006), the Court also found that failure to comply with the notice provisions failed to state a claim, but dismissed the action *without* prejudice. Today, the Court takes yet another approach and decides to pass the buck by refusing to address the plaintiff's argument that even if dismissal is warranted, then it should be without prejudice.

¶20.    In my opinion, even if dismissal is the appropriate remedy, the dismissal should be without prejudice. "[D]ismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." *Wallace v. Jones*, 572 So. 2d 371, 376 (Miss. 1990) (citing *Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982)). In cases where the plaintiff has "simply jumped the gun in filing suit," we should afford them the opportunity to meet the requirements of Section 11-1-58, without depriving them of a cause of action.

### III. Dismissal is Not the Appropriate Sanction for Noncompliance.

¶21.    There is absolutely no language in either Section 11-1-58 or Section 15-1-36 which provides that the remedy for noncompliance is dismissal. By reading a remedy into the statute that does not exist, our Court is not adhering to the tenets of strict construction, and continues to judicially legislate a remedy which the Court itself has rejected as harsh and extreme. *Dinet v. Gavagnie*, 948 So. 2d 1281, 1285 (Miss. 2007) ("dismissals should be

13

granted only when less drastic alternatives have been considered and such lesser sanctions would not serve the best interest of justice") (citing *Wallace*, 572 So. 2d at 376-77).

¶22.    I must continue to stress my conviction that requiring strict compliance with statutory provisions infringes upon the fundamental right of access to courts and deprives citizens of property without due process as guaranteed by our federal and state constitutions. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 1154, 71 L. Ed. 2d 265 (1982) ("a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause"); U.S. Const. amend. XI, § 1 ("nor shall any State deprive any person of life, liberty, or property without due process of law"); U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances"); Miss. Const. of 1890, art. 3, § 24 ("All courts shall be open; and every person for an injury done to him, in his good land, goods, person or reputation, shall have a remedy by due course of the law, and right and justice shall be administered, without sale, denial, or delay"); Miss Const. of 1890, art. 3, § 25 ("No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both"). *See also Caldwell v. North Miss. Med. Center*, 956 So. 2d 888, 895-97 (Miss. 2007) (Diaz, J., dissenting); *Johnson v. Rao*, 952 So. 2d 151, 159-65 (Miss. 2007) (Graves, J., dissenting); *Arceo v. Toliver*, 949 So. 2d 691, 698-704 (Miss. 2006) (Graves, J., dissenting).

¶23.    Our Court relentlessly clings to "strict" construction or "plain language" as a justification for dismissing cases for failure to comply with the statute. *Caldwell*, 956 So.

14

2d at 894-95 (citing *Walker*, 931 So. 2d at 588-89). *See also Arceo*, 949 So. 2d at 696 (stating the plain language of Section 15-1-36 requires dismissal). If the Court is applying a strict constructionist view to the statute, as it claims, I do not understand why it is so difficult to determine whether dismissal should be with or without prejudice. Perhaps the Court's confusion, and constantly changing position, stems from the statute's ***complete silence*** as to a remedy.

### Conclusion

¶24.   By failing to timely raise the standing issue, the defendants have waived the defense of failure to comply with Section 11-1-58. Additionally, even if dismissal is warranted, the majority should address the plaintiff's argument that the dismissal should be without prejudice. Finally, because our constitutional guarantees cannot be abridged by this Court's interpretation of statutory procedural rules, I must dissent.

**GRAVES, J., JOINS THIS OPINION.**