GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. David J. Caldwell, D.M.D., brought suit against Glen C. Warren, Sr., M.D., River Oaks Hospital, Inc., and the Mississippi Neurosurgery and Spine Center, PLLC, alleging medical negligence, fraud, and negligence per se due to a failure to maintain true and accurate hospital records. The circuit court granted summary judgment for Dr. Warren and the Mississippi Neurosurgery and Spine Center because: (1) Dr. Caldwell’s expert did not hold an unrestricted medical license, and (2) the existence of a prior pending action required dismissal of the current action. We affirm the circuit court’s grant of summary judgment as to the claim of medical negligence; however, we reverse the circuit court’s grant of summary judgment as to the claims of fraud and negligence per se. Accordingly, the case is remanded for further proceedings consistent with this opinion regarding the claims of fraud and negligence per se.
 

 FACTS
 

 ¶ 2. On June 17, 2003, Dr. Caldwell underwent a cervical discectomy performed by Dr. Warren at River Oaks Hospital. Dr. Caldwell claims that this is not the surgery to which he had previously consented. Instead, he understood that he was to have two bone spurs removed. After the surgery, Dr. Caldwell experienced complications breathing, swallowing, and
 
 *753
 
 sleeping, along with severe pain and discomfort. Dr. Caldwell contacted Dr. Warren’s office by phone numerous times, and he was prescribed various medications.
 

 ¶ 3. Dr. Warren did not conduct a postoperative follow-up until eleven weeks following the surgery. Dr. Caldwell was informed that the locking plate and screws that were placed in his neck were out of place and needed to be removed. A second surgery was performed by Dr. Warren to remove the plate and screws.
 

 ¶ 4. On June 15, 2005, Dr. Caldwell sent his notice of intention to commence an action to Dr. Warren and the Mississippi Neurosurgery and Spine Center as is required by Mississippi Code Annotated section 15-1-36(15) (Rev.2003). That section requires that sixty days from the time written notice is given pass before a medical negligence claim may begin. Here, the sixtieth day fell on Sunday, August 14, 2005. In an abundance of caution, Dr. Caldwell filed two identical complaints— one on Friday, August 12, 2005, and one on Monday, August 15, 2005. Only the August 15th complaint was served on the defendants.
 

 ¶ 5. Dr. Warren and the Mississippi Neurosurgery and Spine Center filed a motion for summary judgment or, in the alternative, to dismiss claiming: (1) Dr. Caldwell had failed to designate a medical expert, and (2) a prior action was pending based on the same claim. Dr. Caldwell was granted an extension of time, and he later designated Dr. John A. Frenz as his expert. Dr. Warren and the Mississippi Neurosurgery and Spine Center then filed a supplement to their motion for summary judgment and objected to Dr. Frenz testifying as an expert in this case because: (1) Dr. Frenz was unqualified to be a medical expert in neurosurgery, and (2) Dr. Frenz did not hold an unrestricted medical license.
 

 ¶ 6. The circuit court granted summary judgment in favor of Dr. Warren and the Mississippi Neurosurgery and Spine Center based on the fact that Dr. Frenz did not have an unrestricted medical license. Alternatively, the circuit court found that dismissal was necessary because the August 12th complaint constituted a prior action and violated the prohibition against splitting claims. The circuit court certified a partial final judgment under Mississippi Rule of Civil Procedure 54(b), finding that Dr. Warren and the Mississippi Neurosurgery and Spine Center should be finally dismissed in accord with the grant of summary judgment as to all claims. Dr. Caldwell filed a motion to file an out-of-time appeal that was granted by the circuit court.
 

 ¶ 7. Dr. Caldwell now appeals claiming that the circuit court erred by (1) granting summary judgment based upon Dr. Frenz’s restricted medical license, (2) granting dismissal based upon the two separate actions maintained by Dr. Caldwell, and (3) dismissing all of his claims when the order did not address each cause of action.
 

 STANDARD OF REVIEW
 

 ¶ 8. The standard of review of an order granting summary judgment is de novo.
 
 PPG Architectural Finishes, Inc. v. Lowery,
 
 909 So.2d 47, 49(¶ 8) (Miss.2005) (citing
 
 Hurdle v. Holloway,
 
 848 So.2d 183, 185(¶ 4) (Miss.2003)). It is well settled that “[a] summary judgment motion is only properly granted when no genuine issue of material fact exists. The moving party has the burden of demonstrating that no genuine issue of material fact exists within the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.’ ”
 
 Id.
 
 (quoting M.R.C.P. 56(c)).
 

 
 *754
 
 ¶ 9. The supreme court has set forth the standard of review in medical negligence actions as follows:
 

 Absent error so obvious that a layman could easily determine fault, expert testimony is generally required to survive summary judgment and establish the negligence of a physician. A trial judge’s determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion.
 

 Sheffield v. Goodwin,
 
 740 So.2d 854, 856(¶ 6) (Miss.1999) (internal citations omitted).
 

 ANALYSIS
 

 1. Whether the circuit court erred by granting Dr. Caldwell’s motion to file an out-of-time appeal.
 

 ¶ 10. Dr. Warren argues that this appeal should never have been taken. He claims that the circuit court erred in granting Dr. Caldwell’s motion to file an out-of-time appeal because Dr. Caldwell did not prove any excusable neglect. While it is true that a circuit court may grant extra time for appeal upon a finding of excusable neglect under Mississippi Rule of Appellate Procedure 4(g), we find that the circuit court had authority to grant the out-of-time appeal under Mississippi Rule of Appellate Procedure 4(h).
 

 ¶ 11. Rule 4(h) allows a circuit court to reopen the time for appeal “if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier....” Here, Dr. Caldwell filed a motion stating that the final judgment was sent to the wrong address; thus, he never received notice of its entry. Dr. Warren’s response to the motion contained no allegation of any type of prejudice that such an out-of-time appeal might cause. Further, the comments to Rule 4 state, “the concept of excusable neglect embodied in Rule 4(g) simply has no place in the application of Rule 4(h).” Therefore, the circuit court had authority under Rule 4(h) to allow this appeal despite Dr. Caldwell’s failure to prove excusable neglect.
 

 2. Whether the circuit court erred by dismissing the second complaint filed by Dr. Caldwell on August 15, 2005.
 

 ¶ 12. There is an additional issue that we must address before reaching the merits of this appeal. It regards the validity of the two complaints filed by Dr. Caldwell. Mississippi Code Annotated section 15-1-36(15) (Rev.2003) requires that a notice of claim be filed sixty days prior to the filing of the complaint in a medical negligence action. The sixtieth day in this case fell on a Sunday. Dr. Caldwell claims that, at the time he filed his complaints, the law was unclear as to how to proceed when the sixtieth day fell on the weekend, i.e., whether the complaint should be filed on Friday — within the statute of limitation but before the sixtieth day, or on Monday' — after the sixtieth day and possibly outside the statute of limitations.
 

 ¶ 13. The circuit court held that Dr. Caldwell was attempting to maintain two separate actions and dismissed the second complaint due to the existence of the first complaint. There is no question that Dr. Caldwell filed two complaints. However, he did so out of an abundance of caution because, at the time, it was unclear as to how he should proceed under the statute. It is evident that Dr. Caldwell did not
 
 *755
 
 attempt to, nor did he, file two separate actions based on the same cause of action; instead, he filed an identical complaint on two different days. The conclusion by the circuit court that there were two separate actions was in error. Further, based on the applicable statute and supreme court precedent, we find that the circuit court dismissed the wrong filing.
 

 ¶ 14. Mississippi Code Annotated section 15-1-36(1) (Rev.2003) sets the statute of limitations for a medical malpractice action at two years from the date of the alleged negligent act. Section 15-1-36(15) adds the requirement that a notice of claim be given sixty days prior to the filing of such action:
 

 No action based upon the health care provider’s professional negligence may be begun unless the defendant has been given at least sixty (60) days’ prior written notice of the intention to begin the action. No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered. If the notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended sixty (60) days from the service of the notice for said health care providers and others.
 

 ¶ 15. Dr. Caldwell was faced with the decision to file on Friday before the passing of sixty days — potentially in violation of section 15-1-36(15) — or to file on Monday — potentially after the running of the two-year statute of limitations. Thus, he filed on both days out of caution.
 

 ¶ 16. The clear language of section 15-1-36(15) prohibits the filing of an action before the defendant has been given at least sixty days’ notice. Thus, Dr. Caldwell’s filing on August 12, 2005, was invalid as it was filed only fifty-eight days following the notice of intention.
 
 See also Williams v. Skelton,
 
 2007-CA-00095-COA, — So.3d — (¶ 6) (Miss.Ct.App.2008) (holding that where the plaintiff waited only thirty-seven days before filing the complaint, she did not comply with requisite sixty-day waiting period; thus, the medical negligence action was properly dismissed).
 
 [1]
 
 However, we find that the second filing of the complaint on August 15, 2005, was valid as the required sixty days had passed and the filing was within the statute of limitations as interpreted by the supreme court.
 

 ¶ 17. The two complaints at issue in the present case were filed before the supreme court clarified how to proceed under section 15-1-36(15) in
 
 Pope v. Brock,
 
 912 So.2d 935, 939(¶ 21) (Miss.2005). In
 
 Pope,
 
 the supreme court found section 15 — 1— 36(15) to be ambiguous.
 
 Pope,
 
 912 So.2d at 936-37(¶ 5). In clarifying that ambiguity, the supreme court in
 
 Pope
 
 construed section 15-1-36(15) together with Mississippi Code Annotated section 15-1-57 (Rev.2003), which states:
 

 When any person shall be prohibited by law ... from commencing or prosecuting any action or remedy, the time during which such person shall be so prohibited ... shall not be computed as any part of the period of time limited by this chapter for the commencement of such action.
 

 Pope,
 
 912 So.2d at 938(¶ 14). Because Pope was prohibited from filing during the
 
 *756
 
 sixty-day period, this statute prohibited the inclusion of those sixty days in the computation of the statute of limitations.
 
 Id.
 
 at (¶ 15). It was held “that the most reasonable interpretation of [sections] 15-1-36(15) and 15-1-57 tolls the two-year statute of limitations for sixty days.”
 
 Id.
 
 at 939(¶ 21).
 

 ¶ 18. Thus, following
 
 Pope,
 
 Dr. Caldwell had two years and sixty days to file his action. The allegedly negligent surgery occurred on June 17, 2003. The second filing of the complaint on August 15, 2005, was within this time period. The circuit court erred by dismissing the complaint filed on August 15, 2005. As this complaint was the valid of the two filed, the circuit court’s proper course of action would have been to dismiss the first complaint filed on August 12, 2005, and proceed under the August 15, 2005, complaint. Because the complaints were identical, this error does not effect the issues addressed in the circuit court’s grant of summary judgment or the assignments of error raised on appeal. Accordingly, we now address those issues.
 

 S. Whether the circuit court improperly granted summary judgment for Dr. Warren and the Mississippi Neurosurgery and Spine Center based on the qualifications held by Dr. Caldwell’s medical expert.
 

 ¶ 19. Dr. Caldwell contends that the grant of summary judgment in favor of Dr. Warren and the Mississippi Neurosurgery and Spine Center was in error. Specifically, he argues that an unrestricted medical license is not a requisite to be an expert witness in a medical negligence action. In response, Dr. Warren and the Mississippi Neurosurgery and Spine Center argue that the regulations of the State Board of Medical Licensure (“the Board”) require that a physician who testifies as an expert in a legal matter hold an unrestricted medical license. They additionally contend that Dr. Frenz is not qualified to testify as an expert under Mississippi Rule of Evidence 702.
 

 ¶ 20. Dr. Frenz was designated as Dr. Caldwell’s expert. In 2001, while under investigation for sexual impropriety involving his patients, Dr. Frenz resigned his medical and staff privileges at Rankin Medical Center. Charges were filed by the Board, and Dr. Frenz surrendered his license to practice medicine in Mississippi. The Alabama State Board of Medical Examiners found that Dr. Frenz committed fraud when he attempted to renew his Alabama medical license without any mention of the investigation in Mississippi. Thus, his Alabama medical license was also revoked.
 

 ¶ 21. Dr. Frenz did not practice medicine from October 2001 until his license was reinstated on March 20, 2006. However, his license was reinstated with certain restrictions. Among the various restrictions was the requirement that Dr. Frenz could no longer practice neurosurgery.
 

 a. Mississippi State Board of Medical Licensure Rules and Regulations
 

 II22. The Mississippi Legislature, through the passage of Mississippi Code Annotated section 73-43-11 (Rev.2008), relegated certain powers and responsibilities to the State Board of Medical Licen-sure, including the power to license physicians. The Board enacted various rules and regulations regarding the activities of medical experts in legal proceedings. The purpose of these regulations is “to protect the public, to set professional standards, to enforce the provisions of law regarding the performance of medical expert activities by physicians, and to further other legitimate government purposes in the public inter
 
 *757
 
 est.” Section 1, Chapter 22, Rule 100 of the Miss. State Bd. of Med. Licensure Rules and Regulations (Rev. August 2008).
 

 ¶ 23. The regulations further state:
 

 Except as otherwise provided by law, rule or regulation of this state, any medical expert activity by a physician regarding a legal matter pending in a state or federal court or administrative agency in Mississippi must be performed by a physician who holds a
 
 current unrestricted medical license
 
 in Mississippi, another state or foreign jurisdiction, and who has the qualifications to serve as a medical expert on the issue(s) in question by virtue of knowledge, skill, experience, training, or education.
 

 Section 1, Chapter 22, Rule 400 of the Miss. State Bd. of Med. Licensure Rules and Regulations (Rev. August 2008) (emphasis added). Dr. Warren and the Mississippi Neurosurgery and Spine Center argue that this regulation requires that a physician expert in a medical negligence case hold an unrestricted medical license. Therefore, because Dr. Frenz’s medical license was subject to several restrictions, he was not qualified as an expert.
 

 ¶ 24. Dr. Caldwell responds that Mississippi case law trumps the regulations of the Board; thus, an unrestricted medical license is not always required. The supreme court has allowed an expert in the field of toxicology and pharmacology, who did not have a medical degree, to testify as to a physician’s standard of care when prescribing medication.
 
 Thompson v. Carter,
 
 518 So.2d 609, 615 (Miss.1987). It was held that “[a] witness may qualify as an expert based on his knowledge, skill, experience, training, education, or a combination thereof. Qualification as an expert does not necessarily rest upon the educational or professional degree a witness possesses.”
 
 Id.
 
 at 614. The toxicologist was found to have a great deal of knowledge about prescribing medication — the very issue to which his testimony was offered.
 
 Id.
 

 ¶ 25. The supreme court’s holding in
 
 Thompson
 
 allows for expert testimony in medical negligence cases despite the expert’s lack of a medical license.
 
 See also Sheffield,
 
 740 So.2d at 856-57 (¶¶ 6-11). Moreover, the Board’s regulations specifically state that they are not to conflict with Mississippi case law:
 

 No part of these regulations is intended to conflict with or supercede the authority of any state or federal court or administrative agency to designate a physician as a medical expert in a legal matter then pending before the court or agency. The Board does not intend for these regulations to conflict with or su-percede the description or regulation of the function of a physician serving as an “expert” as that term is used in the Mississippi Rules of Evidence or in other provisions of law, rules, regulations, or decisions of any court or administrative agency.
 

 Section 1, Chapter 22, Rule 201 of the Miss. State Bd. of Med. Licensure Rules and Regulations (Rev. August 2008). Accordingly, we find that an unrestricted medical license is not always a prerequisite to an expert’s testimony regarding the standard of care at issue. As such, the circuit court erred by granting summary judgment in favor of Dr. Warren and the Mississippi Neurosurgery and Spine Center on the basis that Dr. Frenz’s medical license was restricted.
 

 b. Mississippi Rule of Evidence 702
 

 ¶ 26. However, under our de novo review of the trial court’s decision, we find that the medical negligence claim was properly dismissed because Dr. Frenz was not qualified to testify as an expert pursuant to Mississippi Rule of Evidence 702.
 
 *758
 
 While the supreme court in
 
 Thompson
 
 held that a medical license is not the sine qua non to qualify as an expert in a medical negligence action, the opinion referenced Rule 702 and clarified that, “[s]imply put, before one may testify as an expert, that person must be shown to know a great deal regarding the subject of his testimony.”
 
 Thompson,
 
 518 So.2d at 614.
 

 ¶ 27. Rule 702 states:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
 

 ¶ 28. The evidence before us shows that Dr. Frenz did not have the required specialized knowledge. Here, the proposed expert testimony was in the area of neurosurgery. Dr. Warren’s alleged negligence in the field of neurosurgery occurred in 2003 — during the time period in which Dr. Frenz was not allowed to practice medicine.
 

 ¶ 29. Proceedings regarding the possible reinstatement of Dr. Frenz’s medical license were held on September 15, 2005. In its order, the Board found that Dr. Frenz had submitted to an assessment by the Center for Personalized Education for Physicians. It was determined that Dr. Frenz had deficiencies in his medical knowledge, specifically in the areas of spinal and intra cranial topics, as well as patient care documentation issues. The Director of Licensure for the Board found that there were multiple grounds upon which the Board could deny licensure of Dr. Frenz: (1) Dr. Frenz had fraudulently procured a license to practice medicine in Alabama in violation of Mississippi Code Annotated section 73-25-29(9) and (10) (Rev.2004), and (2) Dr. Frenz was evaluated to be incompetent in the practice of medicine or surgery in violation of section 73-25-83(b) (Rev.2004).
 

 ¶ 30. The Board then applied several restrictions that would apply when Dr. Frenz’s application for licensure was granted. Some of these restrictions require that Dr. Frenz: (1) have the consistent use of a chaperone at all times, (2) report for polygraph examinations, (3) never have a solo practice, (4) continue AA group meetings and therapy, and (5) agree to no longer practice neurosurgery. We note that it is not a requirement that a proposed expert be a specialist in a particular branch of the medical profession as long as the expert is familiar with the standards of the speciality.
 
 West v. Sanders Clinic for Women, P.A.,
 
 661 So.2d 714, 718-19 (Miss.1995) (citations omitted). The issue is the scope of the expert’s knowledge and not any type of artificial classification by title.
 
 Id.
 
 (citations omitted).
 

 ¶ 31. Here, it cannot be said that Dr. Frenz is a specialist in neurosurgery as the State of Mississippi prohibits him from practicing neurosurgery. Further, this Court cannot find that he is qualified based on his specialized knowledge, skill, experience, training, or education because the very reason he is not allowed to practice neurosurgery is that he was found to have deficiencies in his medical knowledge, specifically in the areas of spinal and intra cranial topics.
 

 ¶ 32. Dr. Caldwell cannot prove his medical negligence claim without proper expert testimony. Therefore, the circuit court’s dismissal of the claims of medical
 
 *759
 
 negligence against Dr. Warren and the Mississippi Neurosurgery and Spine Center was proper because Dr. Frenz did not have the requisite medical knowledge to testify as to the proper standard of care for Dr. Caldwell’s spinal surgery. Accordingly, this issue is without merit, and the circuit court’s grant of summary judgment dismissing the medical negligence claims against Dr. Warren and the Mississippi Neurosurgery and Spine Center is affirmed.
 

 k- Whether the circuit court improperly dismissed Dr. Caldwell’s claims of fraud and negligence per se.
 

 ¶ 33. Dr. Caldwell’s complaint set forth claims of fraud and negligence per se in addition to the medical negligence claim. In his opinion and order that granted summary judgment as to the medical negligence claim, the circuit judge stated: “[Dr. Caldwell] complained of a variety of claims and causes of action, but all are considered as a medical malpractice claim.”
 

 ¶ 34. However, the fraud claim is based on Dr. Caldwell’s allegation that his medical records were altered, including a forged signature on an informed consent document. The complaint also alleges that hospital records and other documents were deliberately misplaced. The negligence per se claim regards a statutory duty to maintain true and accurate hospital records. Neither of these claims are related to the medical negligence claim. They center on issues of record keeping and forgery — issues that were never addressed in any manner by the circuit judge in his dismissal of the claims.
 

 ¶ 35. We find that it was error for the circuit judge to summarily consider all the claims as a medical negligence claim. The issues of fraud and negligence per se were separate and distinct from the claim of medical negligence. Further, the underlying facts of the fraud and negligence per se claims were not addressed by the circuit court. As such, the circuit court’s grant of summary judgment did not fully adjudicate Dr. Caldwell’s claims.
 
 See
 
 M.R.C.P. 56(d). The claims of fraud and negligence per se are still pending. Accordingly, the circuit court’s judgment dismissing these claims on summary judgment is reversed, and the case is remanded to the circuit court for the adjudication of the claims of fraud and negligence per se.
 

 ¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR, FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEES.
 

 LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., AND CARLTON, J., CONCUR IN RESULT ONLY.
 

 [1]
 

 . At the time of this writing, no mandate has been issued in
 
 Williams.
 
 A petition for writ of certiorari was filed with the supreme court in this matter on September 2, 2008.
 
 See
 
 M.R.A.P. 40(a) and 41(a) and (b). Therefore, the opinion is not final.
 
 See Miss. Transp. Comm’n v. Allday,
 
 726 So.2d 563, 565-66(¶ 8) (Miss.1998).