BARNES, J.,
 

 for the Court:
 

 ¶ 1. In this medical malpractice action, Diann and David Hans (“the Hanses”) appeal the Harrison County Circuit Court’s dismissal in favor of Dr. Arthur Sproles and Dr. James Lovette and the grant of summary judgment in favor of Memorial Hospital at Gulfport (Memorial). We find that the Hanses’ re-joinder of Drs. Sproles and Lovette as defendants via an amended complaint after statutory notice was provided cured their initial failure to give notice. Accordingly, we reverse and remand, finding that their motions to dismiss were improvidently granted. We, however, find no error in the circuit court’s grant of summary judgment in favor of Memorial.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. According to Diann’s answers to her interrogatories and her hospital records, on April 6, 2006, Diann, suffering from abdominal pain, went to see Dr. Jim Gad-dy in Gulfport, Mississippi. Dr. Gaddy determined that Diann had appendicitis and immediately referred her to Memorial’s emergency room (ER). He also called to alert the hospital of Diann’s condition. Subsequent to a CT scan which was performed later that afternoon, Diann was again informed that the medical problem was with her appendix. Following a number of unsuccessful attempts to contact Dr. Lovette, the on-call internal medicine specialist, Memorial was finally contacted by Dr. Sproles, who advised the hospital to admit Diann to him, administer antibiotics and pain medication, and to schedule surgery for the following morning. Diann was admitted to Memorial as an inpatient in accordance with Dr. Sproles’s instruc
 
 *1273
 
 tions. Diann claims that she was told that she would be the first patient to be operated on in the morning. Dr. Sproles arrived at 8:30 a.m., and Diann was prepped for surgery approximately two hours later. Following the procedure, Dr. Sproles informed Diann’s husband, David, that Diann was fine.
 

 ¶ 3. In the days following Diann’s surgery, a number of discrepancies arose concerning the nature and extent of Diann’s condition. Diann was told by an attending nurse that Diann’s appendix had ruptured; yet, Dr. Sproles reported that Diann’s appendix had not ruptured. However, when Diann questioned him further the next day, Dr. Sproles admitted that Diann’s appendix did, in fact, rupture. Diann was discharged from Memorial on April 14, 2006.
 

 ¶ 4. Immediately after Diann left the hospital, her surgical incision began discharging fluid, and when the discharge did not subside, Diann returned to Memorial that same evening. She was told she would require more surgery. However, on the morning of April 15, 2006, Dr. Sproles informed Diann that surgery would not be necessary, and that she could return home. However, Diann continued to experience pain and complications from the surgery.
 

 ¶ 5. On March 29, 2007, the Hanses filed a complaint, alleging that the care and treatment provided by Memorial, Dr. Sproles, and Dr. Lovette (referred to collectively as “the Appellees”) were both untimely and substandard. The complaint further alleged that the Appellees treated Diann in a negligent manner and failed to exercise the requisite degree of care and diligence adhered to by similarly-situated physicians and accredited hospitals. With respect to Drs. Sproles and Lovette, the circuit court granted judgments of dismissal without prejudice on May 30, 2007, based upon the Hanses’ failure to provide pre-suit notice as required under Mississippi Code Annotated section 15-1-36(15) (Rev.2003). The Hanses maintained no objection to the .dismissal of the two doctors from the original complaint as they admittedly failed to give the pre-suit notice as required by the statute. However, subsequent to Drs. Sproles’s and Lovette’s respective motions to dismiss, but prior to the circuit court’s judgment of dismissal, the Hanses sent the required pre-suit notice to both doctors on May 2, 2007. Thereafter, on March 26, 2008, the Hanses filed an amended complaint joining the two doctors back into the suit. In response to the Hanses’ amended complaint, Drs. Lo-vette and Sproles again filed motions to dismiss, claiming that giving the required notice and filing the amended complaint did not cure the original lack of notice. Out of an abundance of caution, and before the circuit court ruled on the doctors’ motions to dismiss, the Hanses filed a second cause of action on May 19, 2008, alleging the same allegation of medical negligence and asserting the same injuries and damages as the amended complaint.
 
 [1]
 
 The propriety and status of the second suit are not currently before us. On August 27, 2008, the circuit court once again dismissed Drs. Lovette and Sproles from the original suit. It is from this second dismissal that the Hanses now appeal.
 

 ¶ 6. In the meantime, Memorial filed a motion for summaiy judgment on March 10, 2008, claiming that the Hanses failed to identify any expert witness in discovery who would support their claims of medical negligence. The Hanses filed a response to Memorial’s motion and included a letter by Dr. William Hale, whose medical opinion was that both Memorial and Dr. Sproles acted negligently. Memorial sub
 
 *1274
 
 sequently filed an amended motion for summary judgment alleging that the medical-expert letter was insufficient and that Dr. Hale’s curriculum vitae failed to display familiarity with the standards of ER medicine. One day before the hearing on Memorial’s motion for summary judgment, the Hanses filed an affidavit by Dr. Hale, which incorporated by reference two opinion letters: one dated March 24, 2008, and a second letter dated May 22, 2008. After the hearing, the circuit court granted Memorial’s motion for summary judgment, finding that the Hanses’ expert testimony failed to establish a prima facie case of medical malpractice. The Hanses filed a timely notice of appeal.
 

 ANALYSIS
 

 I. Whether it was error for the circuit court to dismiss the Hanses’ claims against Drs. Sproles and Lovette.
 

 ¶ 7. The first issue raised on appeal concerns Mississippi Code Annotated section 15-1-36(15), which states:
 

 No action based upon the health care provider’s professional negligence may be begun unless the defendant has been given at least sixty (60) days’ prior mitten notice of the intention to begin the action.
 
 No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.
 

 (Emphasis added). Both the Mississippi Supreme Court and this Court have affirmed the dismissal of medical malpractice claims when a plaintiff fails to serve this statutorily required notice.
 
 See, e.g., Arceo v. Tolliver,
 
 949 So.2d 691 (Miss. 2006)
 
 (Arceo
 
 /);
 
 Pítalo v. GPCH-GP, Inc.,
 
 933 So.2d 927 (Miss.2006);
 
 Nelson v. Baptist Mem’l Hosp.-N. Miss., Inc.,
 
 972 So.2d 667 (Miss.Ct.App.2007). A plaintiffs “failure to send to defendants notice of intent to sue is an inexcusable deviation from the Legislature’s requirements for process and notice under Mississippi] Code Ann[otated] [section] 15-1-36(15).”
 
 Pítalo,
 
 933 So.2d at 929 (¶ 7). In
 
 Arceo I,
 
 the Mississippi Supreme Court held that, while plaintiffs have the constitutional right to seek redress in our state courts, they further have the responsibility to comply with the applicable rules and statutory mandates, including section 15 — 1— 36(15). The court concluded that a different approach would render a statute setting time limitations “meaningless.”
 
 Arceo I,
 
 949 So.2d at 697 (¶ 13).
 

 ¶ 8. In the instant case, the Hanses failed to provide Drs. Sproles and Lovette with the necessary pre-suit notice before filing their March 2007 complaint. Then, on May 2, 2007, shortly before Drs. Sproles and Lovette were dismissed from the original action, the Hanses provided the requisite notice.
 
 [2]
 
 The Hanses subsequently filed a motion to amend their complaint, which was granted by the circuit court on March 26, 2008. The Hanses’ amended complaint was filed a little less than one year after the May 2007 notice. As of the filing of the amended complaint, the Hanses were still within the applicable
 
 *1275
 
 statute of limitations for medical malpractice claims.
 

 ¶ 9. On appeal, the Hanses argue that Drs. Sproles and Lovette were properly dismissed from the original action but were provided with the necessary notices prior to the filing of the first amended complaint, thus remedying any error. Although the Hanses concede their initial error, they contend that nothing in section 15-1-36(15) precludes them from curing this failure by joining the same defendants by an amended complaint following timely compliance with 15-1-36(15). The issue before this Court is whether the Hanses’ attempt to cure this failure by the amended complaint offends the plain meaning of 15-1-36(15).
 
 [3]
 

 ¶ 10. Drs. Sproles and Lovette contend that it does. Citing
 
 Arceo I,
 
 Pítalo, and
 
 Nelson,
 
 they argue that the Hanses are prohibited from dismissing the doctors from the original action and joining them back into the original action through an amended complaint, and any attempt to cure the original complaint would render the statute a nullity. The instant case, however, is clearly distinguishable from these cases as both
 
 Pítalo
 
 and
 
 Arceo I
 
 concern plaintiffs who failed to provide the health-care defendants with any statutorily required notice.
 
 [4]
 
 While
 
 Nelson
 
 is more on point, it is also distinguishable. In
 
 Nelson,
 
 the plaintiff failed to give notice prior to the filing of the initial complaint. However, the plaintiff later gave notice to the defendants and then filed an amended complaint after the requisite sixty days. This Court found that “the notice was an ‘inexcusable deviation’ from the requirements of section 15-1-36(15), and ... warranted] dismissal.”
 
 Nelson,
 
 972 So.2d at 673 (¶ 17) (quoting
 
 Pítalo,
 
 933 So.2d at 929 (¶ 7)). In
 
 Nelson,
 
 however, the healthcare defendants were never dismissed from the initial action. In the case before us, the claims against Drs. Sproles and Lovette were voluntarily dismissed on May 30, 2007, when the Hanses realized that they had failed to give appropriate notice under section 15-1-36(15). Therefore, for ten months, no action was pending against Drs. Sproles and Lovette. The amended complaint, thereafter, raised the claim of medical negligence against them anew.
 

 ¶ 11. Drs. Sproles and Lovette submit that the plain meaning of section 15 — 1— 36(15) indicates that, once an “action” has “begun” without proper notice to the physician defendants, it cannot be cured. They contend that the interplay between the statutory language “may be begun” in section 15-1-36(15) and the language of Mississippi Rule of Civil Procedure 3(a) suggests that an “action” is commenced upon the filing of an original complaint. Thus, they submit that the Hanses’ failure to provide notice may be cured only by filing a separate, second action. However, the doctors fail to note that Mississippi Code Annotated section 15-1-36(15) states
 
 *1276
 
 that “[n]o action
 
 based upon the health care provider’s professional, negligence
 
 may be begun ...” without the requisite notice. (Emphasis added). This reading of the statute indicates that the “action” contemplated is that against the individual health-care provider. We see nothing in the plain wording of the statute which indicates that the action may not be “begun” by an amended complaint under Mississippi Rule of Civil Procedure 15, rather than an initial complaint under Rule 3 of the Mississippi Rules of Civil Procedure.
 

 ¶ 12. Further, Drs. Sproles and Lovette assert that the Hanses failed to demonstrate any prejudice or injury from the dismissal of the first amended complaint as a second civil action is pending before the circuit court. That case, however, is not before us. Further, if we were to adopt Drs. Sproles’s and Lovette’s interpretation of 15-1-36(15), the application of the pre-suit requirement would unnecessarily restrict access to the courts and further burden the judicial system with redundant lawsuits. The interplay between 15 — 1— 36(15) and an action for wrongful death provides an illustration of one of the ramifications of the doctors’ argument. The Mississippi wrongful-death statute provides that “there shall be but one (1) suit for the same death.” Miss.Code Ann. § 11-7-13 (Rev.2004). The doctors’ interpretation of 15-1-36(15) would preclude a plaintiff, in a case such as this, from curing any failure to provide pre-suit notice since the second suit would be prohibited.
 

 ¶ 13. Drs. Sproles and Lovette argue that a plain reading of the statute reveals a mandate to allow a health-care provider time to mount an appropriate defense. However, when asked to highlight either expressed or implied language within the statute proscribing a move to cure an initial error, they concede that there is nothing to this effect in the statute. Therefore, we find that the dismissal of Drs. Sproles and Lovette from the initial complaint, coupled with the requisite sixty-day pre-suit notice provided to them prior to the filing of the Hanses’ amended complaint, satisfies the notice requirements articulated in section 15-1-36(15).
 

 ¶ 14. Accordingly, we find the circuit court’s second dismissal of the action against Drs. Sproles and Lovette was in error. We reverse and remand for further proceedings in the circuit court.
 

 II. Whether the circuit court erred in granting summary judgment in favor of Memorial.
 

 ¶ 15. This Court conducts a de novo review of an order granting summary judgment.
 
 Caldwell v. Warren,
 
 2 So.3d 751, 753 (¶ 8) (Miss.Ct.App.2009) (citation omitted). In a summary-judgment proceeding, the movant must show that “there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.”
 
 Richard v. Supervalu, Inc.,
 
 974 So.2d 944, 948 (¶ 11) (Miss.Ct.App.2008).
 
 In
 
 turn, the party opposing the motion must set forth “specific facts” by affidavit or otherwise that demonstrate “a genuine issue for trial.”
 
 Alqasim v. Capitol City Hotel Investors,
 
 989 So.2d 488, 491 (¶ 5) (Miss.Ct.App.2008) (quoting M.R.C.P. 56(e)). The evidence, shaped by the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, must be viewed in a light most favorable to the non-movant.
 
 Id.
 
 The circuit court, upon a motion for summary judgment, simply “determines if there are any disputed issues of material fact when the plaintiffs evidence is given the benefit of all reasonable inferences!).]”
 
 Partin v. N. Miss. Med. Ctr., Inc.,
 
 929 So.2d 924, 929 (¶ 16) (Miss.2007).
 

 ¶ 16. “In a negligence action, the plaintiff bears the burden of producing
 
 *1277
 
 evidence sufficient to establish ... that the defendant breached the established standard of care and that such breach was the proximate cause of [the plaintiffs] injuries.”
 
 Palmer v. Biloxi Reg’l Med. Ctr. Inc.,
 
 564 So.2d 1346, 1855 (Miss.1990). Within the negligence context, a hearing for summary judgment demands that the plaintiff rebuts the defendant’s charge that there is no genuine issue of material facts by producing “evidence of significant and probative value.”
 
 Id.
 
 Thus, the plaintiff may not rely solely upon the mere allegations or denials of his pleadings.
 
 Id.
 
 at 1356. Rather, the plaintiff must submit affidavits or otherwise set forth specific facts showing that there are “genuine issues for trial.”
 
 Id.
 
 Any opposing affidavits must: (1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent to testify.
 
 Id.
 

 ¶ 17. The Mississippi Supreme Court has recently held that:
 

 In order to establish a prima facie case of medical negligence, [a plaintiff] must prove “that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant’s breach of duty was a proximate cause of the plaintiffs injury, and; (4) the plaintiff was injured as a result.”
 

 McDonald v. Mem’l Hosp. at Gulfport,
 
 8 So.3d 175, 180 (¶ 12) (Miss.2009) (quoting
 
 Delta Reg’l Med. Ctr. v. Venton,
 
 964 So.2d 500, 504 (¶ 8) (Miss.2007)). Generally, expert testimony is required to “identify and articulate the requisite standard that was not complied with ... [and] establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.”
 
 Id.
 
 (quoting
 
 Bamer v. Gorman,
 
 605 So.2d 805, 809 (Miss.1992)).
 

 ¶ 18. In the instant case, Memorial bore the burden of persuading the circuit court that no genuine issue of material fact exists. In its original motion for summary judgment, filed on March 10, 2008, Memorial pointed out that the Hanses failed to identify any expert witness who would support their claim of medical negligence. In then* response to Memorial’s motion, the Hanses provided supplemental answers to interrogatories and the curriculum vitae of Dr. Hale, along with his expert report, a one-page letter dated March 24, 2008. Memorial filed an amended motion for summary judgment on April 21, 2008, alleging that: (1) Dr. Hale lacked either the training or skill in ER medicine to testify competently to the standards of ER care; and (2) Dr. Hale’s affidavit failed to articulate
 
 who
 
 violated the standard of care,
 
 how
 
 the standard of care was violated, or
 
 what
 
 the standard of care requires. One day before the hearing, the Hanses filed Dr. Hale’s affidavit, which incorporated by reference two medical opinion letters — the one dated March 24, 2008, and a second one dated May 22, 2008. After a hearing, the circuit court granted Memorial’s motion, holding that the Hanses failed to sustain their burden of demonstrating that Memorial breached a recognized standard of care and that such breach was the proximate cause of Diann’s injuries.
 

 ¶ 19. Although Memorial contends that Dr. Hale, a gastroenterologist, was not qualified to testify in the area of ER medicine, we observe that the circuit court judge never addressed this issue.
 
 [5]
 
 
 *1278
 
 “A witness may testify as an expert to ‘assist the trier of fact to understand the evidence or to determine a fact issue’ if the witness is ‘qualified as an expert by knowledge, skill, experience, training, or education’ and ‘if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.’”
 
 Hubbard v. Wansley,
 
 954 So.2d 951, 957 (¶ 13) (Miss. 2007) (quoting M.R.E. 702). “It is the scope of the witnesses] knowledge and not the artificial classification by title that should govern the threshold question of admissibility.”
 
 Id.
 
 (quoting
 
 West v. Sanders Clinic for Women, P.A.,
 
 661 So.2d 714, 719 (Miss.1995)). A doctor will be allowed to testify if the court is satisfied by his familiarity with the standards of a speciality, even though the doctor may not actually practice in that specialty.
 
 Id.
 
 Whether any given doctor may testify as to a particular matter depends upon his training and knowledge, and while an expert’s testimony will be limited to his area of expertise, there is “nothing in our law that would prohibit one from being qualified as an expert in more than one field.”
 
 Cowart v. State,
 
 910 So.2d 726, 730 (¶ 16) (Miss.Ct. App.2005). As long as an expert witness possesses, in several areas of practice, that “peculiar knowledge” unlikely to be expressed by a layperson, the expert may be qualified to speak to those areas of practice.
 
 Partin,
 
 929 So.2d at 930 (¶ 21) (quoting
 
 Nunnally v. R.J. Reynolds Tobacco Co.,
 
 869 So.2d 373, 384 (¶ 36) (Miss.2004)).
 

 ¶ 20. Applying this rationale to the present case, we find that the mere fact that Dr. Hale is a gastroenterologist does not preclude him from testifying to the standards of ER care. Rather, the threshold question of competency is whether Dr. Hale possesses the requisite knowledge and experience to offer testimony concerning ER medicine. Dr. Hale is board certified in gastroenterology and internal medicine. Further, Dr. Hale has experience working in a hospital environment, as well as an impressive academic record, and he is currently the Chief of Gastroenterology at Norwalk Hospital in Connecticut. However, we find nothing in Dr. Hale’s curriculum vitae alone which would indicate that he is qualified to opine on Memorial’s ER procedures. Additionally, we find nothing in Dr. Hale’s letters to affirmatively show that he has extensive experience in ER patient transfers. Although he stated that he “both initiate[s] and receive[s] transfers regularly,” he does not state whether those transfers are from the ER department or that he is aware of the process that ER physicians follow in transferring patients from the ER to them admission to the hospital. The circuit court, however, did not find that Dr. Hale was unqualified to render his opinion but held that the opinion failed to establish a prima facie case of medical negligence. Having reviewed Dr. Hale’s letters in detail and having given the benefit of all reasonable inferences to the Hanses, we agree with the circuit court that Dr. Hale’s letters failed “to establish a prima facie case of medical malpractice” against Memorial. Consequently, we cannot find that the circuit court erred in granting summary judgment.
 

 ¶ 21. Memorial argues that Dr. Hale’s letters fail to provide the necessary degree of specificity to demonstrate what the standard of care requires. The Mississippi Supreme Court has held that the failure to employ such legal terms of art such as “breach” and “causation” does not render an affidavit invalid.
 
 Partin,
 
 929 So.2d at
 
 *1279
 
 932 (¶ 28). However, in
 
 Kidd v. McRae’s Stores Partnership,
 
 951 So.2d 622, 626 (¶ 19) (Miss.Ct.App.2007), this Court noted that:
 

 [W]hen an expert’s opinion is not based on
 
 a reasonable degree of medical certainty,
 
 or the opinion is articulated in a way that does not make the opinion probable, the jury cannot use that information to make a decision. Failure to properly qualify an expert opinion typically occurs in testimony that is speculative, using phrases such as “probability,” “possibility,” or even “strong possibility.” It is the intent of the law “that if a physician cannot form an opinion with
 
 sufficient certainty
 
 so as to make a medical judgment, neither can a jury use that information to reach a decision.”
 

 (Internal citations omitted) (emphasis added).
 

 ¶ 22. Dr. Hale’s affidavit incorporated, by reference, two letters which stated his medical opinion regarding Diann’s medical care. In the letter dated March 24, 2008, Dr. Hale stated that:
 

 Although the diagnosis of appendicitis was suspected clinically and confirmed radiologically in an appropriately prompt fashion, there was
 
 a significant delay
 
 before [Diann] was evaluated by a surgeon, Dr. Arthur Sproles,
 
 and a further delay
 
 before an appendectomy was performed.
 
 These delays
 
 were negligent and unreasonable and were the result of failure to follow accepted medical practice.
 
 In my medical opinion,
 
 it is
 
 more likely than not that these delays
 
 resulted in perforation of the appendix and that this perforation, and the resulting peritoneal contamination led to the development of a wound abscess.... It is
 
 highly likely
 
 that Mrs. Hans will require a second surgical procedure to correct this problem. Thus it is my opinion that these postoperative complications are the
 
 direct result of the substantial time delays
 
 that occurred between the diagnosis and eventual surgical treatment of this patient’s acute appendicitis.
 

 (Emphasis added). Memorial contends that the Hanses may not rely on Dr. Hale’s sweeping allegations of a delay in service as a sufficient articulation of the requisite standard of ER care. We agree. There is no language in this letter which either identifies what party was responsible for which delay, or identifies any basis for the contention that the delays were “significant,” “substantial,” or the result of a failure to follow the requisite standard of care.
 

 ¶ 23. We, however, must also consider Dr. Hale’s May 2008 letter in conjunction with his first. The second letter makes no additional conclusions as to causation or injury, but it states in pertinent part:
 

 I hope the following adequately explains my interpretation of the events that occurred at Memorial Hospital regarding Mrs. Hans and answers your questions. Admitting a patient to hospital from the Emergency Department is actually a transfer between services, Emergency and Surgery in this case, and requires the same level of communication as does a transfer between two hospitals. The clinical scenario, results of tests, and immediate management plans must be discussed by the transferring physicians with the physicians accepting the patient in transfer. Until an adequate transfer of care transpired, the Emergency Department continued to be responsible for this patient’s care.
 

 Once the surgeon was contacted and agreed to accept the patient in transfer, the Emergency Department physicians had
 
 a duty to ensure that the patient’s care met minimum standards.'
 
 Any responsible physician, particularly one specializing in emergency medicine, un
 
 *1280
 
 derstands the potential for progression of acute appendicitis and the increasing risk of spontaneous perforation when surgical therapy is delayed. By allowing such a patient to be transferred from the emergency department without a personal evaluation of the patient by the surgeon,
 
 or knowledge that the surgeon will soon be in attendance,
 
 the ER physicians did not complete an
 
 appropriate disposition
 
 of the plaintiff and
 
 exposed her to unnecessary risk
 
 ....
 
 Additionally, the hospital bears further responsibility for the delay in obtaining surgical considtation because of their administrative failure to provide updated on-call information to the Emergency Department.
 

 Transferring a patient to a different in-hospital service (Medicine to Surgery) or between hospitals is a standard part of clinical medicine and occurs on a daily basis. It is not unique to the Emergency Department. As a consulting gastroenterologist, I both initiate and receive transfers regularly. In all instances, both the transferring and accepting parties must be clearly informed as to relevant clinical details and
 
 be confident that the receiving service has an appropriate and timely medical plan for th,e patient once the transfer is effected.
 

 (Emphasis added).
 

 ¶ 24. Counsel for Memorial clearly articulated her concerns regarding the letters when she stated at the hearing:
 

 The only thing that is given is a general “there was a delay.” A delay for what? [W]as the delay caused by the ER? Was the delay caused by a surgeon? Was the delay caused by, you know, the fact that they had patients in surgery? Was it necessary that she be operated on within so many hours? Nobody — there is no evidence and no affidavit and no medical expert saying that anything should have been done any differently as we’re standing here today.... [H]e’s got to show with specificity what standard of care was actually breached and what action or inaction was taken on the part of the hospital.
 

 We agree that there is nothing in Dr. Hale’s opinion which articulates what would be considered “an adequate transfer of care,” what the “minimum standards” for the patient’s care would be, or how the ER physicians were to “ensure” that care. How soon is “soon?” What would be considered “an appropriate disposition”? Further, there is nothing in the letter that states with any specificity what the ER should have done differently when Dr. Sproles advised it to admit the patient and schedule her for surgery the next morning, or how any other procedure would have reduced delay.
 

 ¶25. The only delay Dr. Hale specifically assigned to Memorial is “the delay in obtaining surgical consultation because of their administrative failure to provide updated on-call information to the Emergency Department.” Memorial asserts that the Hanses are barred from raising the issue of the on-call schedule as it was never presented before the circuit court.
 
 [6]
 
 Further, at oral argument before this Court, Memorial impressed upon this Court that the issue of a call list was never before the circuit court during the summary judgment motion. Matters raised for the first time on appeal need not be considered, and to do so would effectively
 
 *1281
 
 deprive the circuit court of the opportunity to first rule on the issue.
 
 Waters v. Gne-mi,
 
 907 So.2d 307, 324 (¶ 39) (Miss.2005). While Memorial is correct in this assertion, the record reveals that this issue was introduced in the Hanses’ amended complaint, and Dr. Hale addressed this issue in his May 2008 letter. Therefore, we find that this issue is not barred from consideration.
 

 ¶ 26. However, Dr. Hale’s assignment of responsibility to Memorial regarding the call list is not supported by the record. Under
 
 Daubert,
 
 the opinion of an expert “must be supported by appropriate validation i.e., ‘good grounds,’ based on what is known.”
 
 Davis v. Christian Broth. Homes of Jackson, Miss., Inc.,
 
 957 So.2d 390, 410 (¶ 47) (Miss.Ct.App.2007) (quoting
 
 DaubeH v. Merrell Doto Pharms., Inc.,
 
 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). There was no evidence to support such an allegation by Dr. Hale. In fact, counsel for the Hanses admitted at the hearing that the facts regarding the error in the call list were not yet known. He stated at the hearing:
 

 I should start out by saying that there are two grounds we have against the hospital for things [it] did wrong. The first involves the call list.... Now, the hospital records show or purport to show that a Dr. Lovette was on call for this type of treatment.... The ER claims that [it] got the call list and that [it] didn’t know anything about Dr. Lo-vette and Dr. Moses switching responsibilities .... Dr. Lovette had told me that Dr. Moses was the one in charge of even preparing the call list. Not only was he taking over [Dr.] Lovette’s responsibility for that day, but he was the one that prepared the call list and sent it over to the hospital, and
 
 presumably his deposition ivould clear up this first issue of who screwed up the call list. [Dr.J Lo-vette and I believe [Dr.] Moses[,J when I depose them[J are going to say they amended the call list, they sent it over to the hospital, and the hospital was the one that was careless or negligent in misplacing the amended call list.
 

 (Emphasis added). This statement clearly indicates that there was no factual basis for which Dr. Hale could opine regarding who was responsible for the error in the call list. Further, Dr. Hale’s first letter opines that “more likely than not that
 
 these delays
 
 resulted in perforation of the appendix[.]” (Emphasis added). However, there is nothing in the record to support his opinion that any of the delays were attributable to Memorial.
 

 ¶ 27. Based upon the foregoing, we can find no error in the circuit court’s grant of summary judgment in favor of Memorial.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS, ONE-FOURTH TO APPELLEE SPROLES, AND ONE-FOURTH TO APPELLEE LOVETTE.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING,' J., CONCURS IN RESULT ONLY. ISHEE, J., NOT PARTICIPATING.
 

 [1]
 

 . The complaint also added two additional physicians as defendants.
 

 [2]
 

 . Drs. Sproles and Lovette do not challenge the sufficiency of the content of the notice itself. A second notice was also sent to Drs. Sproles, Lovette, and two other physicians on March 14, 2008. These two additional doctors, Drs. Michael Moses and Paul Mace, were joined in the second cause of action. The Hanses explained that, as they were sending new claim notices to the two additional physicians, they thought it appropriate to send the same notice to Drs. Sproles and Lovette, even though they had already received a claim notice on May 2, 2007.
 

 [3]
 

 . When interpreting a statute that is not ambiguous, this Court will apply the plain meaning of the statute.
 
 Eagle Pac. Ins. Co. v. Quintanilla,
 
 923 So.2d 266, 269 (¶ 7) (Miss. Ct.App.2006) (citation omitted). We “must seek the intention of the Legislature, and knowing it, must adopt that interpretation which will meet the real meaning of the Legislature.”
 
 Pítalo,
 
 933 So.2d at 929 (¶ 5) (citing
 
 Evans v. Boyle Flying Serv., Inc.,
 
 680 So.2d 821, 825 (Miss. 1996)). In drafting 15-1-36(15), "the Legislature did not incorporate any given exceptions to this rule which would alleviate the prerequisite condition of prior written notice.”
 
 Id.
 

 [4]
 

 .
 
 After the supreme court's ruling in
 
 Arceo I,
 
 the plaintiff attempted to provide notice pursuant to section 15-1-36; however, in
 
 Arceo v. Tolliver (Arceo II),
 
 19 So.3d 67 (¶ 21) (Miss. 2009), the supreme court found that the notice did not substantially comply with the statutory requirements.
 

 [5]
 

 . The Mississippi Supreme Court has held that a circuit court’s decision as to whether an expert is qualified to testify “is given the widest possible discretion.” i/mV.
 
 of Miss. Med. Ctr. v. Pounders,
 
 970 So.2d 141, 146 (¶ 16) (Miss.2007) (citation omitted). The au
 
 *1278
 
 thority of a circuit court to "resolve doubts on the qualifications of proffered experts” applies equally to summary judgment proceedings.
 
 Palmer,
 
 564 So.2d at 1357.
 

 [6]
 

 . It is worthy to note here that the issue of the call list was added in the Hanses' amended complaint, and Memorial filed a response claiming prejudice from the addition of the claims after the Hanses had been deposed. However, the circuit court, granted the Hans-es' motion to amend the complaint, stating that the motion was "uncontested.”